In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1162

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DJUANE MCPHAUL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:14-cr-00203 — **Tanya Walton Pratt**, *Judge.*

ARGUED MAY 31, 2016 — DECIDED AUGUST 26, 2016

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and
YANDLE, *District Judge.**

WILLIAMS, *Circuit Judge*. Djuane McPhaul already had a vi-
olent felony conviction on his record when he was caught

* Of the Southern District of Illinois, sitting by designation.

driving with a loaded gun in the car, while wearing body armor. He was charged with being a felon in possession of a gun, and with being a violent felon in possession of body armor. A jury convicted him on the body armor charge but acquitted him on the gun charge. On appeal, he argues that the body armor should have been suppressed because it was discovered through an unconstitutional search. We disagree. The pat-down that revealed the body armor was lawful because officers had probable cause to stop McPhaul—for minor traffic violations, driving on a suspended license, and using a car to flee officers.

McPhaul also challenges two Sentencing Guidelines enhancements, one for using the body armor "in connection with another felony offense," and another for attempting to obstruct justice. We reject these challenges too. McPhaul used a car to flee officers, which is a felony, and he wore the body armor while doing so. And when he was in pre-trial custody, he attempted to obstruct justice through several letters he wrote to his cousin. So we affirm his conviction and sentence.

## I. BACKGROUND

Police Officer Andrew Sell saw a car turn right from the center lane on a three-lane road and then drive through private property to avoid a red light. Using his computer, Sell learned that the car was registered to Djuane McPhaul, whose license was suspended. Sell observed that the driver looked like McPhaul (the computer displayed McPhaul's picture). Sell decided to stop the car, but the driver made some quick turns and then led the police on a mile-long "slow-speed" chase, even after Sell activated his lights and siren. When the driver finally stopped and was arrested, a pat-down revealed

that he was wearing body armor, and a loaded gun was found in the car's center console.

The driver *was* McPhaul, who had previously been convicted of a crime of violence. He was charged with being a felon in possession of a gun, and with being a violent felon in possession of body armor. While in pre-trial custody, he wrote letters to his cousin, telling her she could ignore a grand jury subpoena, and asking her to swear that she put the gun in his car without his knowledge.

McPhaul unsuccessfully moved to suppress the body armor, arguing it was discovered through an unconstitutional search. At sentencing, the judge applied Guidelines enhancements for using the body armor in connection with another felony offense, and for attempting to obstruct justice. McPhaul's Guidelines range was 24–30 months and the judge imposed a 24-month sentence. McPhaul appeals.

## II. ANALYSIS

### A. No Abuse of Discretion in Denying Motion to Suppress Body Armor

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Under certain circumstances, evidence gathered in violation of a defendant's Fourth Amendment rights will be suppressed. *See generally United States v. Martin*, 807 F.3d 842, 845–46 (7th Cir. 2015). In reviewing the district judge's denial of McPhaul's motion to suppress, we review legal conclusions de novo and findings of fact for clear error. *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010). The district court wrote that "Officer Sell observed Mr. McPhaul commit two, and possibly three, traffic infractions, and after running his license plate (which is a reasonable practice of police officers), learned that the car was registered to [a] driver with a suspended license. Officer Sell had probable cause to initiate a traffic stop." We agree.

But McPhaul did not stop right away. Instead, as the district court wrote, "After Officer Sell turned on his police lights and siren, Mr. McPhaul did not immediately stop but instead traveled for nearly a mile and made four turns before finally coming to a stop in a gas station parking lot. These facts are sufficient probable cause for an arrest for resisting law enforcement in a vehicle." Again, we agree. Under Indiana law, it is a felony to use a vehicle to flee from a law-enforcement officer who has activated his lights and siren in an attempt to make a stop. *See* Ind. Code §§ 35-44.1-3-1(a)(3), (b)(1)(A). Because our focus is on *probable cause*, McPhaul's argument that he was not, in fact, resisting law enforcement—he was only trying to get to a safe place before stopping—is legally irrelevant. *E.g.*, *United States v. Reaves*, 796 F.3d 738, 741 (7th Cir. 2015) ("[W]e need only inquire whether the officer had *probable cause to believe* that a traffic violation occurred, not whether a violation actually occurred.") (emphasis added) (internal citation and quotation marks omitted).

McPhaul says that even if there was probable cause to arrest him, the body armor was still discovered through an un-

reasonable search. He argues that his violations were relatively minor so they did not justify the officers' use of their "felony stop" procedures (including removing McPhaul from the car and patting him down). The argument is fundamentally misplaced. Whether the officers acted in accordance with their departmental policies, or even state law, is irrelevant. *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Federal constitutional law—the applicable law—is clear. Having lawfully arrested McPhaul, the officers were allowed to pat him down. *Id*. at 176–78; *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). There was no Fourth Amendment violation, so the district judge did not err in denying McPhaul's motion to suppress.

### B. No Clear Error in Finding Body Armor Used in Connection with Another Felony Offense

The Guidelines assign a base offense level of 10 to the crime of being a violent felon in possession of body armor. U.S.S.G. § 2K2.6(a). The offense level is increased to 14 if the defendant "used the body armor in connection with another felony offense." *Id*. § 2K2.6(b)(1). The district judge found that McPhaul used a vehicle to flee law enforcement, and found that the body armor was connected to that felony because McPhaul wore it as he fled. So the judge applied the enhancement. We review that decision for clear error. *United States v. Schmitt*, 770 F.3d 524, 538–39 (7th Cir. 2014).

The Guidelines explicitly state that the enhancement does not apply "if the body armor was merely possessed." U.S.S.G. § 2K2.6 App. Note 1(C). Instead, to be "used," the body armor

must be "actively employed in a manner to protect the person from gunfire." *Id*. We can envision an argument that McPhaul's body armor was not "actively employed in a manner to protect [him] from gunfire," but McPhaul made no such argument (and his lawyer explicitly confirmed at oral argument that no such argument was being advanced). Instead, McPhaul's only argument is that he did not commit "another felony offense" because he was not trying to flee, he was only trying to get to a safe place before stopping. He stresses that his speed during the pursuit never exceeded 40 miles per hour. But he ignores the fact that he drove for almost a mile and made several turns along the way. The district judge considered the issue and found that the preponderance of the evidence supported the conclusion that McPhaul committed the Indiana felony. That finding was not clearly erroneous.

## C. No Error in Finding McPhaul Attempted to Obstruct Justice

Attempting to obstruct justice earns offenders a two-level increase under the Guidelines. U.S.S.G. § 3C1.1. We review the district judge's underlying factual findings for clear error, and we review de novo the determination that those findings support the enhancement. *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011).

While in pre-trial custody, McPhaul wrote several letters to his cousin, Dayonia Ivey. He asked her to swear that the gun was hers and that she put it in his car without his knowledge. He tried to allay any fears she might have by telling her that the gun would not lead to serious charges for her, as she did not have a prior felony conviction. He implored, "without you I can't win my case." He offered to give her money, which he would earn by settling a civil suit that he

intended to bring against the police. And he told her she could ignore the subpoena she had received to testify before the grand jury. (Indeed, he said the advice about skipping grand jury proceedings came from his attorney.)

Ivey listened. She skipped the grand jury proceedings and signed an affidavit saying she put the gun in McPhaul's car without his knowledge. Because she skipped the grand jury sitting, she was brought to court to determine whether she should be held in contempt. After the judge appointed her a lawyer, Ivey testified, retracting her claim that she was responsible for the gun.

In challenging the finding that he attempted to obstruct justice, McPhaul stresses that he was not able to cross-examine Ivey when she testified at her contempt hearing. But we agree with the district judge—the ability to cross-examine Ivey is irrelevant because the obstruction enhancement was based on McPhaul's own statements in his multiple letters from jail. In particular, we note that urging Ivey to skip the grand jury sitting was an attempt to obstruct justice. *See United States v. Monem*, 104 F.3d 905, 909 (7th Cir. 1997).

### III. CONCLUSION

We AFFIRM McPhaul's conviction and sentence.