In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2812

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS B. FIFER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:14-cr-30006 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 6, 2017 — DECIDED JULY 17, 2017

Before EASTERBROOK, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Marcus Fifer was tried and convicted on multiple counts of producing child pornography. On appeal he challenges several of the district court's evidentiary rulings and one of its jury instructions. He also appeals the terms of his supervised release. We find no error and affirm.

## I. BACKGROUND

### A. Search and Seizure

In November 2013, police used a confidential source to complete two controlled buys of heroin from an apartment in Springfield, Illinois. The apartment belonged to a registered sex offender named Marcus Fifer. Shortly afterwards, the police obtained a search warrant from an Illinois state court authorizing them to search Fifer's apartment for drugs and other evidence including cell phones and computers. During the search, they discovered a half-naked 16-year-old girl hiding under a bed. The girl (whose initials are C.T.) was at first uncooperative; she refused to come out from under the bed and she lied about her name and age.

One of the officers attempted to identify the girl by looking through some cell phones and a tablet that were recovered from the apartment. When the officer saw sexually explicit images of C.T. and Fifer on those devices, he referred the case to his department's sex-crimes division.[1] Officers from that division eventually secured C.T.'s cooperation. C.T. revealed that she and Fifer had been living together over the past several months and had produced a number of sex videos using the electronic devices (four cell phones, a laptop computer, and a tablet) found in the apartment.

---

[1] The officer who referred the case testified that he would have done so regardless of what he had seen on the phones and tablet. He was already aware (before executing the warrant) that Fifer was a registered sex offender, and he averred that the referral was justified based solely on the fact that C.T. was found half-naked and uncooperative in the home of a known sex offender.

The police then got a warrant from federal court to search the electronic devices for child pornography. The application for the federal warrant made no mention of the initial on-site search of the phones or tablet, but was based entirely on C.T.'s statements to the officers from the sex-crimes division. The execution of the federal warrant revealed sexually explicit images and videos of C.T. and Fifer.

## B.  Proceedings

In 2015 Fifer was charged with more than twenty counts of producing child pornography in violation of 18 U.S.C. §§ 2251(a) and (e). Before trial, Fifer moved to suppress the evidence obtained from his electronic devices on the ground that the state search warrant lacked probable cause. The district court found probable cause and denied the motion to suppress. At the same time, the court granted the government's motion to exclude evidence regarding Fifer's knowledge (or lack of knowledge) of C.T.'s age, and also excluded as irrelevant a number of exhibits and witnesses proffered by Fifer to show that he and C.T. had a "loving relationship." Initially the court also barred evidence of Fifer's prior sex-offense conviction,[2] but later admitted the conviction after Fifer testified at trial that his "sole purpose" in producing pornography with C.T. was to enhance their loving relationship.

At the close of the evidence, the court used this Circuit's pattern jury instruction[3] to advise the jury on how to evaluate the opinion testimony presented at trial. Fifer unsuccessfully objected to the instruction on the ground that it bolstered the

---

[2] In 2008 Fifer pleaded guilty to sexually assaulting an 11-year-old girl.

[3] Seventh Circuit Pattern Criminal Jury Instruction 3.13.

government's expert witnesses by mentioning their official ti-
tles. Here's the portion of the instruction to which Fifer ob-
jected:

> You have heard witnesses, namely, Department
> of Homeland Security Task Force Officer Ellen
> Price, who gave opinions and testimony about
> forensic examination of electronic items as well
> as the extraction of child pornography from
> those same electronic items, and Department of
> Homeland Security Resident agent in charge
> Michael Mitchell … .

The jury ultimately found Fifer guilty of eighteen counts
of producing child pornography. The district court sentenced
Fifer to 35 years in prison plus lifetime supervised release
with mandatory sex-offender treatment. The court ordered
Fifer to "abide by the rules of the [sex-offender] treatment
provider [and] submit to physiological testing, including pol-
ygraph testing."

## II. DISCUSSION

On appeal Fifer challenges each of the district court's evi-
dentiary rulings recounted above. He also challenges the jury
instruction on opinion testimony and the length and terms of
his supervised release. We address each challenge in turn.

### A. Motion to Suppress

In reviewing the district court's denial of Fifer's motion to
suppress, we review its legal conclusions de novo and its fac-
tual findings for clear error. *United States v. McPhaul*, 835 F.3d
687, 689 (7th Cir. 2016).

### *1. Probable Cause*

Fifer argues that the evidence obtained from his apartment should have been suppressed because the state search warrant was not supported by probable cause.[4] Probable cause exists when the supporting affidavit "sets forth sufficient facts to induce a reasonably prudent person to believe that a search will uncover contraband or evidence of a crime." *United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006). "This common-sense, non-technical determination is based not on individual facts in isolation but on the totality of the circumstances known at the time a warrant is requested." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). We give "great deference" to the issuing judge's finding of probable cause. *United States v. Dessart*, 823 F.3d 395, 400 (7th Cir. 2016).

We agree with the issuing judge and the district court that the affidavit used to obtain the state search warrant established probable cause for the search. The officer who submitted the affidavit credibly reported that he and another officer had recently overseen two controlled buys of heroin from Fifer's apartment. Each controlled buy involved the same confidential informant and followed the same procedure. First, the informant arranged the drug deal with Fifer by making a phone call in the presence of the officers. Then the officers searched the informant for money or contraband; they checked his pockets, waistband, outer clothing and coat, and around his socks and shoes. Finding nothing, they gave the informant the buy-money, drove him to Fifer's apartment, and watched him exit the vehicle and walk to a landing that

---

[4] The validity of the federal search warrant is not in question, but more on that later.

led down some stairs to the apartment. About a minute later, the informant reappeared on the landing, returned to the vehicle with a few packets of what was later confirmed to be heroin, and told the officers that Fifer had given him the heroin in exchange for the money. The officers then searched the informant again and again found nothing. Faced with these facts, a reasonably prudent person could easily conclude that a search of Fifer's apartment would reveal contraband or evidence of a crime. See *Sidwell*, 440 F.3d at 869 (affiant's statement that a confidential informant entered an apartment building without contraband and exited moments later with cocaine was sufficient to establish probable cause to search the apartment).

Fifer nonetheless insists that the conditions of the controlled buy weren't stringent enough to ensure that the drugs came from his apartment. His argument is premised on a rather unusual theory: he speculates—with no supporting evidence—that the informant already had the heroin on him when he went to arrange the deal, successfully concealed the heroin from police during the initial search, pretended to deal with Fifer after reaching the apartment, and then produced the heroin he'd concealed and lied that he bought it from Fifer. While it's theoretically possible that the informant framed Fifer (and duped the police) in this way, it's not at all likely. And it certainly isn't so likely as to defeat probable cause, which after all requires "only a probability"—not absolute certainty. See *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *Sidwell*, 440 F.3d at 869. Since the affidavit supporting the state search warrant clearly established at least a probability of criminal activity at Fifer's apartment, we defer to the state court's finding of probable cause.

### *2. Good Faith*

The evidence obtained as a result of the state search warrant was also properly admitted because the executing officers relied on the warrant in good faith. It's well-established that even illegally obtained evidence is "admissible if the officer who conducted the search acted in good faith reliance on a search warrant." *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010). An officer's decision to obtain a warrant is prima facie evidence of good faith. *Id.*

Fifer tries to rebut this presumption by arguing that the affiant officer deliberately or recklessly included false representations in the affidavit. See *United States v. Glover*, 755 F.3d 811, 818 (7th Cir. 2014) ("[T]he good faith exception does not apply[] when the affiant misleads the magistrate with a reckless or knowing disregard for the truth."). To illustrate, he notes that the affidavit says the informant was kept under "constant surveillance" during the controlled buys, whereas the affiant officer later testified that the informant was briefly out of sight after he reached the landing at Fifer's apartment. Such an inconsequential (apparent) discrepancy, however, falls far short of negating the presumption of good faith. See *United States v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013); *United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) ("A technical contradiction does not reveal a disregard of the truth.").

At its core, the affidavit recounts that the police conducted two controlled buys in which the informant (1) called Fifer to arrange a drug deal, (2) went to Fifer's apartment with money and no drugs and came back with drugs and no money, and (3) reported that Fifer had sold him the drugs as arranged. These representations were sufficient to establish probable

cause, and Fifer offers no evidence that any of them are false—much less that they're reckless distortions or outright lies.[5] Under these circumstances, no reasonably well-trained officer would have believed that the search of Fifer's apartment was illegal despite the warrant. See *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The fruits of the search were therefore properly admitted regardless of the warrant's validity.

### 3. On-site Search of Electronic Devices

Fifer alternatively argues that the evidence obtained from his electronic devices should be suppressed because the state search warrant didn't authorize the initial on-site search of the phones and tablet conducted at the apartment. Fifer's argument rests on a semantic distinction: the warrant identifies the apartment as the place "to be searched," and the electronic devices (and other objects) as the items "to be seized." According to Fifer, this distinction means that the warrant authorized only the seizure, but not the search, of the electronic devices found in the apartment. This argument fails for three reasons.

First, by explicitly authorizing the police to seize the electronic devices found in Fifer's apartment, the warrant implicitly authorized them to search those devices as well. At least, that's the most reasonable interpretation. After all, the whole point of a search warrant is to authorize police to *search* for

---

[5] Fifer's failure to show that the affiant officer was dishonest or reckless in preparing the affidavit also dooms his related argument that the district court wrongly deprived him of a *Franks* hearing. See *Souffront*, 338 F.3d at 822 (noting that a *Franks* hearing is required only when the defendant makes a substantial preliminary showing that the affiant intentionally or recklessly included a material false statement in the affidavit).

evidence of a crime. And it seems inescapable that if there's probable cause to seize an object because it might contain evidence of a crime, then there's also probable cause to search the object for the evidence it might contain. Why, then, would the issuing judge order the police to seize an item—such as a computer, a phone, or even a safe (all listed in the warrant)—only to have them reapply for an essentially identical warrant to search the item seized? Why, when the same probable cause that justified the seizure also justifies the search?

We think it generally makes more sense to read a search warrant's command to seize an electronic device as including a concomitant directive to search that device's digital contents. That's certainly the case here, where the basis for the seizure of Fifer's electronic devices was to search them for digital data. That's also how courts read federal search warrants. See, e.g., Fed. R. Crim. P. 41(e)(2)(B) (warrant authorizing seizure of electronic storage media includes implicit authorization to search the media consistent with the warrant). And in the absence of any contrary authority, there's no reason to read Illinois' search warrants any differently.[6]

Second, even if the state search warrant hadn't authorized it, the on-site search of Fifer's electronic devices was nonetheless permissible under the exigent-circumstances exception to the warrant requirement. See *Riley*, 134 S. Ct. at 2486–87, 2494 (noting that even a warrantless cell-phone search may be justified when "the exigencies of the situation" make the search

---

[6] The Supreme Court's holding in *Riley v. California*, 134 S. Ct. 2473 (2014) is not to the contrary. In *Riley*, the Court held only that the warrantless search of a cell phone wasn't justified as a search incident to arrest. *Id.* at 2485, 2493. The Court said nothing about the situation here: searching a cell phone in reliance on a valid warrant.

objectively reasonable). A central purpose of that exception is to "ensure that the police or other government agents are able to assist persons in danger or otherwise in need of assistance." *United States v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000).

That purpose was surely implicated here, where a 16-year-old girl was found half-naked and hiding under a bed in the home of a convicted sexual predator. Given C.T.'s failure to cooperate, it was objectively reasonable for police to search the electronic devices in Fifer's apartment for information to help identify C.T. and locate her family.

Third, even assuming that the on-site search of the electronic devices was illegal, the resulting evidence was still admissible under the independent-source doctrine[7] because it was separately discovered through the execution of the federal search warrant. That warrant, whose validity is not in dispute, did not depend on the evidence derived from the electronic devices during the on-site search, but was based exclusively on what C.T. said during her interview with the officers from the sex-crimes division. The challenged evidence was also admissible under the related doctrine of inevitable discovery,[8] since the officer who did the on-site search credibly testified that he would have referred the case to the sex-crimes

---

[7] The independent-source doctrine allows the introduction of evidence initially discovered unlawfully if it was later discovered by an independent lawful means. See *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000).

[8] Under the inevitable-discovery doctrine, illegally obtained evidence is admissible if the government can prove that the evidence ultimately would have been legally discovered. See *United States v. Marrocco*, 578 F.3d 627, 637 (7th Cir. 2009).

division regardless of what he had seen on the devices. In other words, even if the on-site search hadn't occurred, the federal warrant still would have issued based on C.T.'s statements during her interview, and the evidence from Fifer's electronic devices still would have been discovered as a result of that warrant.

To recap: The district court properly denied Fifer's motion to suppress. The state search warrant was supported by probable cause and the executing officers relied on the warrant in good faith. The warrant authorized the search of the electronic devices found at Fifer's apartment, and exigent circumstances justified the search in any event. Finally, the evidence obtained from the electronic devices was admissible because it was (inevitably) discovered by an independent lawful search pursuant to the federal search warrant.

## B. Other Evidentiary Rulings

We review the district court's decision to admit or exclude evidence for an abuse of discretion. *Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 598 (7th Cir. 2009); *United States v. Hawpetoss*, 478 F.3d 820, 823 (7th Cir. 2007).

### 1. Evidence Regarding Fifer's Knowledge of C.T.'s Age

Fifer argues that the district court wrongly excluded evidence regarding his knowledge (or lack of knowledge) of C.T.'s age. As this court held in *United States v. Fletcher*, 634 F.3d 395, 401 (7th Cir. 2011), a defendant's knowledge of the victim's age is not an element of the offense of producing child pornography under 18 U.S.C. § 2251(a). Evidence that Fifer misjudged C.T.'s age therefore has no bearing on his guilt or innocence under the statute, and the district court properly

excluded that evidence as irrelevant. See Fed. R. Evid. 401 (relevant evidence tends to make a material fact more or less probable than it would be without the evidence).

Fifer also mounts a constitutional challenge to § 2251 as interpreted by *Fletcher*. Without a mistake-of-age defense, he contends, the statute is unconstitutional because it interferes with a "personal and fundamental" "human right": the "right to establish and enhance a meaningful relationship with another person of one's choosing, conditioned only the reasonable belief that the person possess the legal capacity to consent." Even if such a right exists somewhere, it doesn't exist in the Constitution. And that's the end of Fifer's challenge. In determining whether a statute is constitutional, the rights in the Constitution are the only rights that count.

### 2. Fifer's Proffered Witnesses and Exhibits

Fifer next argues that the district court erred by excluding the witnesses and exhibits he proffered to show that he and C.T. had a loving relationship. Through that evidence, Fifer hoped to prove that he would have engaged in sex acts with C.T. regardless of whether the acts were recorded, and therefore that he lacked the criminal intent to produce child pornography under § 2251.

Fifer's argument is based on an overly narrow reading of the statute's intent requirement. To be convicted of producing child pornography under § 2251, a defendant must simply induce a minor to engage in sexually explicit conduct "for the purpose of" producing a visual depiction of that conduct. 18 U.S.C. § 2251(a). Nothing in the statute requires that the production of such a depiction be the defendant's *only* purpose. See *United States v. Vang*, 128 F.3d 1065, 1072 (7th Cir. 1997)

(interpreting a similar statute to mean that a defendant may act "for the purpose of" engaging in sexually illicit conduct even if he has more than one purpose); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) ("The government need not prove [under § 2251(a)] that producing the photographs was [the defendant's] sole purpose for engaging in the sexual activity."); *United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) (A defendant "is no less a child pornographer simply because he is also a pedophile.").

The government in this case presented ample evidence that Fifer intentionally induced C.T. to engage in sexually explicit conduct for the purpose of producing pornographic images. Evidence that Fifer had a loving relationship with C.T. may suggest that he had additional motivations for having sex with her, but that doesn't make it more or less likely that he had the requisite intent to produce illegal visual depictions. Fifer's proffered evidence was thus irrelevant to whether he violated the statute, and the district court properly excluded it on that basis.

### 3. *Evidence of Fifer's Prior Sex-Offense Conviction*

When a defendant is accused of child molestation in a criminal case, evidence that he previously molested a child is admissible for any relevant purpose. Fed. R. Evid. 414(a). Appellate review of the district court's admission of other acts of sexual misconduct is "highly deferential." See *Hawpetoss*, 478 F.3d at 823.

As noted earlier, the district court issued two successive rulings regarding Fifer's previous sex-offense conviction. First, before trial, the court recognized that the conviction was admissible under Rule 414 but nonetheless excluded it under

Rule 403 because its prejudicial effect appeared to outweigh its limited probative value. See Fed. R. Evid. 403 (otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). That all changed once Fifer testified that he produced pornography with C.T. for the purpose of building a better relationship. By putting his intent in issue, Fifer increased the probative value of his prior conviction, which tended to undermine his allegedly pure motivations. See *United States v. Russell*, 662 F.3d 831, 847 (7th Cir. 2011) ("Prior instances of sexual misconduct with a child victim … may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children.").

In light of Fifer's testimony, the district court rightly concluded that the probative value of Fifer's earlier conviction was no longer substantially outweighed by the danger of unfair prejudice. See *id.* at 842–47 (district court properly reversed its earlier ruling excluding child-molestation evidence after defendant's testimony at trial gave the evidence greater probative value). The court did not abuse its discretion in admitting Fifer's prior conviction under Rule 414.

## C. Jury Instruction on Opinion Testimony

"We review a trial court's instructions to the jury with great deference." *Vang,* 128 F.3d at 1069. "[I]nstructions 'which are accurate statements of the law and which are supported by the record will not be disturbed on appeal.'" *Id.*

Fifer argues that the district court's jury instruction on opinion testimony improperly bolstered the government's ex-

pert witnesses because it mentioned the witnesses' official titles in addition to their proper names (e.g., "Department of Homeland Security Resident agent in charge Michael Mitchell," instead of just "Michael Mitchell"). He also argues that the instruction was unfairly prejudicial because it briefly recounted that some of the opinion testimony dealt with the subject of child pornography (e.g., "You have heard witnesses … who gave opinions and testimony about … the extraction of child pornography from … electronic items … .").

These arguments are quickly disposed of. Accurately identifying witnesses by their name and title does not impermissibly bolster their testimony. Nor does accurately recalling the substance of that testimony somehow prejudice the party against whom it was offered. Fifer does not dispute the accuracy—factual or legal—of any portion of the challenged instruction. That is enough to resolve this issue. The challenged instruction is supported by the record and provides no basis for reversal.

### D. Supervised Release

Fifer's final argument is that the district court erred in imposing the terms of his lifetime supervised release. He opposes both the length of the release as well as the condition requiring him to submit to physiological testing to the extent ordered by his sex-offender treatment program.

The main goal of supervised release is "to prevent recidivism and foster the offender's re-entry into society." *United States v. Jones*, 798 F.3d 613, 619 (7th Cir. 2015). The conditions of release must also be "reasonably related to the goals of sentencing—deterrence, rehabilitation, and protecting the pub-

lic—in light of the history and characteristics of the defend-
ant." *United States v. Cary*, 775 F.3d 919, 923–24 (7th Cir. 2015).
The district court has broad discretion when imposing the
terms of supervised release. *United States v. Neal*, 662 F.3d 936,
938 (7th Cir. 2011).

The district court in this case did not abuse its discretion
in determining the length or conditions of Fifer's supervised
release. At sentencing, the court recalled how Fifer "took a
[then-]15-year-old girl, who had nowhere else to go, into [his]
home, not to shelter and protect her, but to prey on her vul-
nerable state and manipulate and exploit her for months be-
fore [being] arrested." The court was "severely troubled by
the harm that these actions may have caused"—actions that
Fifer took while already a registered sex offender with a pre-
vious conviction for sexually assaulting a minor. The court
also expressed concern that Fifer "demonstrated many of the
characteristics of psychopathy and antisocial behavior."
Based on these legitimate considerations, the court concluded
that lifetime supervised release with mandatory sex-offender
treatment was appropriate to ensure public safety and to help
Fifer reenter society without relapsing into criminal activity.
The terms of release were thus reasonably tailored, in light of
Fifer's history and characteristics, to achieve the relevant sen-
tencing goals of deterrence, rehabilitation, and protection of
the public.[9]

---

[9] We reject Fifer's speculative arguments that his physiological testing
may be "quite invasive" and may violate his right against self-incrimina-
tion. The first of these arguments isn't ripe for review and the second is
baseless. See *United States v. Miller*, 829 F.3d 519, 530 (7th Cir. 2016) ("[A]ny
challenge to the hypothetical testing the defendant may be forced to un-

### III. CONCLUSION

Fifer raises a number of arguments on appeal, but none has merit. The district court properly admitted the evidence obtained from the state search warrant, which was supported by probable cause, and properly applied Rule 403's balancing test in admitting the evidence of Fifer's prior conviction under Rule 414. The court also properly excluded certain evidence as irrelevant: neither Fifer's relationship with C.T. nor his knowledge or ignorance of her age had any bearing on whether he committed the crimes charged. The jury instruction regarding opinion testimony was fair and accurate and did not bolster the government's witnesses. And the imposition of lifetime supervised release with mandatory sex-offender treatment was justified under the circumstances; Fifer is a recidivist child predator, and the terms of his release are reasonably necessary to protect the public from future harm. The judgment of the district court is AFFIRMED.

---

dergo 'involves too many contingencies to make the issue ripe for review.'"); *United States v. Kappes*, 782 F.3d 828, 855–56 (7th Cir. 2015) ("A defendant on supervised release retains the privilege to invoke his Fifth Amendment rights.").