In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2044

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE B. HAYNES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 15CR50022-1 — **Philip G. Reinhard**, *Judge.*

ARGUED JANUARY 24, 2018 — DECIDED FEBRUARY 14, 2018

Before BAUER, KANNE, and BARRETT, *Circuit Judges.*

PER CURIAM. Willie Haynes was indicted after sheriff's deputies in Winnebago County executed a search warrant and found drugs and a loaded handgun in his house. Haynes pleaded guilty to possessing heroin and cocaine base with intent to distribute and to possessing a firearm in furtherance of a drug-trafficking crime; he was sentenced to 108 months' imprisonment. Haynes argues that the items found during the

search should have been suppressed because, he says, the affidavit supporting the warrant did not establish probable cause. We affirm the judgment.

## I. BACKGROUND

A confidential informant ("CI") contacted Deputy Fred Jones in early April 2015 and told him that he had recently purchased crack cocaine from "a larger black male" who was selling drugs from his house and that the CI had spoken with the suspect about purchasing more drugs in the future. The CI agreed to participate in a controlled buy. He advised Jones that the suspect would drive from his house and meet the CI in the car to make the sale.

In the days following the CI's tip, Jones periodically surveilled the house at the address the CI had reported. Several times he saw a man fitting the CI's description leave the house, get into a car, drive away, and meet with different individuals in the car for about four to ten minutes. Based on his training and 10 years' experience, Jones believed that these episodes were drug sales.

Members of the County Narcotics Team then set up a controlled purchase of crack cocaine from the suspect. The deputies positioned surveillance on the house and in the surrounding neighborhood. One of them searched the CI and found that he had neither drugs nor money on his person. Deputy Jones then gave the CI $60 for buy money. The CI called the suspect and arranged the purchase; Jones could hear both sides of the conversation. The suspect left the house, got into a car, drove approximately four blocks, and met the CI at an intersection. The CI entered the vehicle, sat in the passenger seat, and exited minutes later. The suspect drove back to the

house and went inside. The deputies observed the suspect with an unobstructed view from the time he left the house to the time he reentered.

The CI returned and told Jones that he purchased crack cocaine from the man in the car. He then handed over a bag with 0.7 grams of a white, rocklike substance that later tested positive for cocaine. Police again searched the CI and found him free of cash and drugs.

Jones applied for a warrant to search the house and submitted an affidavit that recounted the facts as we have summarized them. In the affidavit Jones described the CI's participation but said almost nothing about the CI himself. The CI also did not appear before the circuit judge. Based on Jones's affidavit, the judge issued a warrant that gave the sheriff's deputies four days to search the house and seize drugs, drug paraphernalia, cash, and firearms, among other things.

The sheriff's deputies timely executed the warrant. They found approximately 16 grams of mixtures containing heroin; 8.4 grams of mixtures containing crack cocaine; 1.6 grams of marijuana; a loaded pistol; drug paraphernalia including digital scales, plastic baggies, Dormin (a sleep aid used to cut or dilute heroin), and fake soda cans used to conceal drugs; and $1,174 in cash. Haynes was arrested. At the sheriff's department, Haynes admitted that everything seized was his, that he intended to distribute the drugs, and that he kept the gun for protection.

As relevant here, Haynes was charged with one count of possession with intent to distribute heroin and cocaine base, 21 U.S.C. § 841(a)(1), and one count of possessing a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(a).

Haynes moved to suppress the evidence found during the search, arguing that the warrant was not based on probable cause. The district judge denied the motion. The judge reasoned that the CI's tip, corroborated by surveillance and the controlled buy, provided probable cause; alternatively, he determined that the good-faith exception to the exclusionary rule applied.

Haynes pleaded guilty. As part of the plea agreement, Haynes reserved his right to appeal the denial of his motion to suppress.

## II. ANALYSIS

On appeal Haynes argues that the search warrant was issued without probable cause because, he says, the supporting affidavit did not show that the CI was reliable. The government responds that the affidavit established probable cause even independent from the information proffered by the CI and that, in either case, the evidence should not be suppressed because the officers executed the warrant in good faith.

Probable cause exists when the supporting affidavit presents a total set of circumstances which create a "fair probability" that a search will uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017). We assess whether the issuing judge had a "substantial basis" for concluding that there was probable cause. *Gates*, 462 U.S. at 238; *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). We review a denial of a motion to suppress *de novo*, but give "great deference" to the issuing judge's finding of probable cause. *Fifer*, 863 F.3d at 764.

When the information used to support a finding of probable cause is derived from a CI's tip "the legitimacy of a probable cause determination turns on that 'CI's reliability, veracity and basis of knowledge.'" *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005) (quoting *United States v. Johnson*, 289 F.3d 1034, 1038 (7th Cir. 2002)). When assessing an informant's credibility, an issuing judge must consider "as a whole" (1) the degree of police corroboration; (2) the informant's firsthand knowledge; (3) the detail provided; (4) the time between the reported events and the warrant application; and (5) whether the informant appeared before the judge. *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011).

Haynes insists that these factors show that the CI was not reliable enough for his tip to create probable cause. For example, the CI did not name the suspect, describing him only as "a larger black male." Indeed, in *United States v. Peck*, 317 F.3d 754, (7th Cir. 2003), we determined that an informant provided insufficient detail, and thus there was no probable cause, when the informant was able to describe the defendant only as "a black male." *Id.* at 756. The CI in this case also did not appear before the judge. Finally, the CI's failure to say when he last bought drugs from the suspect, Haynes says, brings the recency of the information provided into question.

Although the factors go both ways, on balance they support the CI's reliability. Most significantly, the deputies corroborated the CI's story with their own investigation by conducting surveillance and executing a controlled buy. *See Johnson*, 655 F.3d at 601 (stating that a controlled buy was "the strongest bit of evidence supporting the warrant"). And the CI had personal knowledge because he had previously purchased drugs from the suspect and they had discussed future

sales (something not in his interest to report). *See United States v. Hansmeier*, 867 F.3d 807, 812 (7th Cir. 2017). The circumstances thus differ from those in *Peck* where there was no independent corroboration and the affidavit did not say how the informant had personal knowledge that drugs were present. 317 F.3d at 756–57. Taken together, the factors, particularly corroboration, support the CI's reliability and thus the conclusion that there was probable cause.

Even excluding the CI's tip, however, the totality of the circumstances described in the warrant support a finding of probable cause. A properly executed controlled buy can establish probable cause, even when the tip that prompted it might not have been reliable. *See United States v. Singleton*, 125 F.3d 1097, 1103 (7th Cir. 1997); *see also United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity."). In *Fifer*, the affidavit at issue described two controlled buys. A confidential informant arranged a drug purchase over the phone while in the presence of police. The officers searched the informant for drugs and money, and finding neither, they gave the informant buy money. The informant met the suspect, returned to the officer minutes later with a substance that tested positive for heroin, and reported that the defendant sold the substance to him. 863 F.3d at 764. We concluded that "faced with these facts, a reasonably prudent person could easily conclude that a search of [the defendant's] apartment would reveal contraband or evidence of a crime." *Fifer*, 863 F.3d at 764. In this case Jones used the same procedure in conducting a controlled buy that we found reliable in *Fifer*. The surveillance and the controlled buy thus established a "fair probability" that the house

contained evidence of illegal activity. *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014).

Because we conclude that there was probable cause, we need not assess whether the good-faith exception to the exclusionary rule would apply.

Haynes makes a few additional arguments, but none is availing. First he argues that the affidavit does not explain why drugs would be at the house and not, for example, in the car where the sale took place. But judges may permissibly infer that evidence of drug dealing is "likely to be found where the dealer[] live[s]." *See Kelly*, 772 F.3d at 1080 (concluding there was probable cause to search residence where controlled buy took place "in the neighborhood"); *Singleton*, 125 F.3d at 1102–03 (same where controlled buy took place "in the vicinity" of the residence). Haynes next protests that the affidavit cannot establish probable cause because it does not specifically identify the defendant. But this was a search warrant, not an arrest warrant; the subject is a location, not a person. The affidavit creates a fair probability that *a* drug dealer lived at the house, and thus that the house contained evidence of crime. *See Kelly*, 772 F.3d at 1080. Finally Haynes suggests there should have been a hearing to determine if there was probable cause. Because Haynes did not raise a material factual dispute (or any factual dispute for that matter), no hearing was necessary. *See United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.