In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-2053

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONNIE CORNELL COSBY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15-cr-0031 — **Philip P. Simon**, *Judge.*

———————————

ARGUED APRIL 11, 2019 — DECIDED MAY 9, 2019

———————————

Before SYKES, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* A jury found Ronnie Cosby guilty of several sex-related offenses, including transporting T.L., a minor, from Illinois to Indiana with the intent that she engage in prostitution. On appeal, Cosby seeks a new trial based on several claims of error. We see none and therefore affirm the judgment of the district court.

## I. Background

### A. Factual Background

Our description of the offense focuses on the facts most relevant to this appeal and established at trial. On February 5, 2015, Cosby exchanged text messages with an individual identified as "Cool." Cosby arranged a prostitution call for Cool in exchange for $120. The next morning, Cool texted Cosby and asked him to "find me some white girls."

At that time, T.L. was a 15-year old Caucasian minor female living with her mother in Indiana. On February 7, 2015, T.L. met a man identified as S.B. and told him that she had problems at home and was into drugs. The next night, S.B. brought T.L. to Cosby's apartment in Hammond, Indiana. T.L. told Cosby that she was a 15-year old runaway. Cosby gave T.L. drugs and alcohol and told her that she had to repay him by prostituting herself. Cosby used his cell phone to take pictures of T.L., telling her how to pose. Then on February 11, 2015, Cosby posted the pictures on the website Backpage to find individuals who would pay for sex. Cosby did not show T.L's face because she was underage and had been reported as missing. T.L. thereafter had oral and vaginal sex with five individuals in Cosby's living room. Cosby negotiated prices with the individuals and kept all of the money.

One day before the Backpage post, on February 10, 2015, Cool texted Cosby saying he would pay $140 for a white girl on February 12, 2015. Cosby responded "I got u" and that the girl was "White." At 5:17 p.m. on February 12, 2015, Cool texted "I[]am here" to Cosby. Twenty-five minutes later, Cool texted, "She was good." Cosby and Cool began to negotiate "another round," but decided to wait until the next week.

That same night, Cosby told T.L. that they were traveling to a motel for T.L. to engage in further prostitution. Cosby drove T.L. and his girlfriend, Tamika Murphy, from Indiana to a Howard Johnson motel in Lansing, Illinois. Around 8:00 p.m., Murphy checked in and, once inside the room, Cosby took more pictures of T.L. that he posted on Backpage. Over the next four days, T.L. had sex with many individuals in the motel room. Cosby negotiated the prices but left before anyone arrived.

Cosby, Murphy, and T.L. checked out of the Lansing motel at 10:30 a.m. on February 15, 2015, which was a Monday. Cool texted Cosby shortly after noon and asked if he was "Set for Thursday," to which Cosby replied, "Yep." Cosby took T.L. from the motel to Murphy's Indiana apartment for two days, during which T.L. did not engage in prostitution. He then took T.L. back to his apartment in Hammond where T.L. had sex with a few more individuals.

On February 18, 2015, S.B. told Cosby that the police were looking for T.L. Cosby called his neighbor, Michael Locke, to say he had a family emergency and Locke agreed to let T.L. stay with him. The next day, Hammond police arrived at Locke's apartment, arrested him, and interviewed T.L. Cool texted that afternoon to say he was on his way. Cosby told him not to come because the police were on his block. On February 23, 2015, Cosby left his cell phone with a girlfriend named Ariel McBounds. The police later recovered the phone from her apartment.

## B. Procedural History

Hammond police eventually arrested Cosby and on March 17, 2015, obtained a state search warrant to search

McBounds' apartment. The warrant authorized the police to seize electronic devices, including "a black in color touch screen cellular telephone which belongs to COSBY." The warrant also authorized the police to seize passwords and data security devices "in order to facilitate the search of the computer systems/computer system components/computer systems storage media named above."

On March 19, 2015, a federal grand jury first indicted Cosby on one count of knowingly transporting a minor in interstate commerce with the intent that she engage in prostitution, in violation of 18 U.S.C. § 2423(a). The court set a trial for May 2015. Following a superseding indictment, on Cosby's motion, the district court continued the trial to September 2015. The government filed a second superseding indictment in June 2015 and then a ten-count third superseding indictment in August 2015. Thereafter, Cosby moved for a competency examination and to again continue the trial date. The court granted both requests and reset the trial for April 2016.

After he was found competent in March 2016, Cosby sought a third continuance to examine Rule 16 materials. The court granted the motion and reset the trial for December 2016. Then, on November 22, 2016, based on *pro se* letters from Cosby regarding his then-counsel, the judge appointed new counsel for Cosby. In December 2016, on Cosby's motion, the court continued the trial for the fourth time to April 2017. That same month, the government produced discovery materials and informed Cosby that electronic evidence was available for inspection at the U.S. Attorney's Office. On February 24, 2017, the court granted Cosby a fifth continuance over the government's objection, resetting the trial to September 7, 2017.

On July 20, 2017, the government filed a seven-count fourth superseding indictment, which dropped three counts and reorganized the remaining counts. Pertinent here, the indictment charged Cosby in Count III with knowingly transporting T.L. from Illinois to Indiana with the intent that she engage in prostitution, in violation of 18 U.S.C. § 2423(a). This count was previously charged in the third superseding indictment as Count II.

On August 11, 2017, Cosby filed his sixth motion to continue the trial, pointing to forthcoming discovery from the government and explaining that his counsel had to spend time on an unrelated case. The government again objected and the district court denied the continuance, reasoning that the case had been pending for almost two and a half years and was not particularly complicated. The court found that Cosby's counsel was capable and "had ample time for trial preparation." The court observed that "very little of the [government's] recent production is actually new" and that materials had been available to counsel for many months. The court also found that "the impact on the victims of the sex trafficking charges weighs heavily against further delay."

Cosby then moved to suppress all evidence seized from his cell phone pursuant to the state search warrant. He argued that the warrant authorized seizure only of the cell phone, and that the police exceeded the warrant's scope by extracting, downloading, and reviewing the phone's contents. The district court rejected the motion, finding that the warrant did, in fact, authorize the seizure of the phone's contents, and regardless, the search was authorized by our decision in *United States v. Fifer*, 863 F.3d 759, 766 (7th Cir. 2017). The

court alternatively held that the independent source and in-evitable discovery doctrines applied in light of a subsequent federal search warrant.

At trial, the government's first witness was FBI Agent Car-rie Landau, who provided expert testimony on sex trafficking, including how pimps attract young women. She also testified that during the relevant time period, pimps and prostitutes generally met individuals through Backpage and set up meet-ings via text message. Agent Landau further testified that she did not "participate in the investigation of this case in partic-ular," had "no knowledge of the facts," and was unaware that the case involved a Lansing motel.

That testimony prompted Cosby to move for a mistrial, claiming that Agent Landau testified falsely. Cosby had iden-tified a previously disclosed report stating that Agent Landau and Agent Philip Conduti had met with the manager of the Howard Johnson motel in Lansing on the day T.L. was lo-cated. The court was "troubled" by this revelation and held an evidentiary hearing, at which Agents Landau and Conduti testified.

Agent Conduti testified that before going to the motel on February 19, 2015, he contacted Agent Landau because of her familiarity with this type of investigation. The agents met at the motel and Agent Landau introduced Agent Conduti to the manager, who provided Agent Conduti with evidence in-cluding Murphy's check-in receipt and surveillance footage. Agent Landau remembered Agent Conduti calling her for as-sistance on a case in Lansing, but she could not recall any facts that Agent Conduti obtained that day.

The district court ultimately denied Cosby's motion for a mistrial. Although Agent Landau incorrectly testified that she was not involved with the investigation, the court could not say that she had lied, rather than merely misremembered. And regardless, the court concluded that any harm could be remedied by the government recalling the agent to testify, which the government did. Before the jury a second time, Agent Landau testified to the above facts on direct and cross-examination. She stated that she learned only after her initial testimony that the encounter related to Cosby's case and she acknowledged that her previous testimony was inaccurate. The agent testified that her new awareness of this information did not change any of her prior expert opinions. Cosby's counsel examined Agent Landau on this testimony.

After the government rested, Cosby moved for a judgment of acquittal on Count III, which charged him with transporting T.L. from Illinois to Indiana with the intent that she engage in prostitution. The district court denied the motion. The jury ultimately found Cosby guilty on Count III and several other charges, but not guilty on other charges. Cosby renewed his motion for a judgment of acquittal as to Count III following the verdict. The court denied the motion and this appeal followed.

## II. Discussion

Cosby seeks a new trial based on five claims of error. Specifically, he challenges the district court's denial of his sixth motion for a continuance; denial of his motion for a judgment of acquittal on Count III; denial of his motion for a mistrial based on Agent Landau's false testimony; failure to take appropriate precautions for a government witness's dual-capac-

ity testimony; and denial of his motion to suppress. As we explain below, Cosby's claims of error fail, and we therefore affirm the judgment of the district court.

## A. Motion to Continue Trial Date

Cosby contends that the district court abused its discretion in denying his sixth motion for a continuance. But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (citation omitted). A court has broad discretion in scheduling trials, *see id.*, and while a court cannot have a "'myopic insistence upon expeditiousness in the face of a justifiable request for delay,'" *United States v. Robbins*, 197 F.3d 829, 846 (7th Cir. 1999) (citation omitted), a court may adhere to a set trial date unless there are compelling reasons to grant a continuance, *United States v. Volpentesta*, 727 F.3d 666, 679 (7th Cir. 2013).

Many factors are relevant to a district court's ruling on a request for a continuance, including (1) the amount of time available for preparation and the defendant's role, if any, in shortening that time; (2) the likelihood of prejudice from denial; (3) the complexity of the case; (4) the status of discovery; and (5) the public interest, including inconvenience to the district court and fairness to the victims. *See United States v. Shields*, 789 F.3d 733, 748 (7th Cir. 2015); *United States v. Chiappetta*, 289 F.3d 995, 999 (7th Cir. 2002); *United States v. Avery*, 208 F.3d 597, 602 (7th Cir. 2000).

Here, the district court properly exercised its discretion to deny Cosby's sixth motion to continue the trial date. To begin,

regarding preparation time, although counsel had other obligations, the court granted counsel two prior continuances and counsel had over nine months to prepare for trial. Also, the July 2017 fourth superseding indictment simplified the case by eliminating counts. Though Cosby alludes to prejudice, he did not show any likelihood of prejudice below nor does he on appeal. *See United States v. Crowder*, 588 F.3d 929, 936 (7th Cir. 2009) (observing that the party seeking a continuance should identify the specific risk of prejudice because vague and conclusory assertions of prejudice are not enough).

Moreover, the district court reasonably concluded that this six-day trial was not substantively complex; most of the evidence consisted of victim narratives and information from Cosby's cell phone. Although the government alerted Cosby to forthcoming discovery in August 2017, only a handful of those materials produced were actually new. The remaining materials were anticipated trial exhibits that the government previously described and had made available to Cosby in December 2016.

Finally—and significantly—the district court reasonably concluded that fairness to the minor victims weighed strongly in favor of denying Cosby's request for a sixth trial continuance. Not only would another continuance cause a significant delay given the court's schedule, but it would exact an emotional toll on the victims including T.L. and G.P., the latter of whom was the alleged victim in charges not relevant to this appeal but who would nonetheless have likely endured additional time in custody on a material-witness warrant. This case had been pending for about two and a half years and was trial ready. Fairness to the victims, especially here, minors who had been sexually exploited, is a weighty and proper

consideration that the district court relied on to deny Cosby's sixth motion to continue.

**B. Sufficiency of the Evidence on Count III**

Cosby next contends that there was insufficient evidence for the jury to convict him on Count III, which charged him with violating 18 U.S.C. § 2423(a). He faces a high bar. "In an appellate challenge to the sufficiency of the evidence supporting a criminal conviction, we view all evidence in the light most favorable to the prosecution." *United States v. Snyder*, 865 F.3d 490, 493 (7th Cir. 2017) (citing, *inter alia*, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Section 2423(a) prohibits any individual from knowingly transporting a minor in interstate commerce with the intent that the individual engage in prostitution or criminal sexual activity. The government need not show that prostitution was the sole reason for the transportation, so long as it was a "dominant or a compelling and efficient purpose." *United States v. Vang*, 128 F.3d 1065, 1072 (7th Cir. 1997); *see also United States v. Berg*, 640 F.3d 239, 248–49 (7th Cir. 2011) (stating that the jury may draw reasonable inferences about the defendant's purpose or intent).

As Cosby sees it, the government failed to prove that he intended T.L. to engage in prostitution when he transported her from the motel in Illinois to Murphy's apartment in Indiana, because T.L. did not engage in prostitution for two days after they returned to Indiana. Cosby's argument fails. Despite the two-day gap, the jury could have reasonably inferred that Cosby's reason for transporting T.L. from Illinois to Indiana was for her to engage in prostitution. Not only did Cosby and Cool exchange text messages about Cool having sex with T.L. both before and after Cosby and T.L. crossed state lines,

but the jury heard extensive evidence about Cosby's relationship with T.L. and his prostituting of her immediately before returning to Indiana. Indeed, the evidence established that the only relationship Cosby had with T.L. was one of pimp to prostitute. Viewing the evidence in the light most favorable to the prosecution, ample evidence existed to convict Cosby on Count III.

## C. Motion for a Mistrial

Cosby next argues that the district court erred in denying his motion for a mistrial based on the testimony of Agent Landau, who initially testified that she had no involvement in the case, but later acknowledged that she did. A district court has broad discretion to declare a mistrial, and we review its decision to deny a mistrial for abuse of discretion. *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019).

The government violates a defendant's due process rights when it obtains a conviction through the knowing use of false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A defendant seeking a new trial based on perjured testimony has the burden to show that "'(1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury.'" *United States v. Coleman*, 914 F.3d 508, 512–13 (7th Cir. 2019) (citation omitted). If the defendant is aware of the falsity and corrects it, the defendant is not necessarily entitled to a new trial. *See United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 877–78 (7th Cir. 2016).

The district court did not abuse its discretion in denying Cosby's motion for a mistrial. Although we, like the district

court, are troubled by the government's failure to immediately correct the agent's testimony, there is no evidence that Agent Landau deliberately lied about her rather inconsequential involvement in introducing Agent Conduti to the manager of the Howard Johnson motel in Lansing that Cosby used to prostitute T.L. Following an evidentiary hearing, the district court reasonably concluded that the testimony could be corrected by recalling Agent Landau and giving Cosby the opportunity to thoroughly examine her about it. And that is what happened—the government recalled the agent and she explained her minor role in the case and the inaccuracy in her testimony. Cosby then had a full opportunity to impeach Agent Landau in this regard and to let the jury determine the impact of the testimony.

By the time the jury retired to deliberate, it was fully aware of the facts and circumstances of Agent Landau's testimony and had heard Cosby's arguments regarding the impact of her testimony. The district court appropriately concluded that there is no reasonable likelihood that Agent Landau's misstatement regarding her minimal involvement in the case affected the jury verdict. Agent Landau was an expert who provided background about sex trafficking during the relevant time period and was not a pivotal witness to the government's case. Nothing that the agent omitted from her initial testimony calls into question her earlier expert opinions and, even if it did, the district court did not err in letting the jury determine what weight to give her testimony, rather than declaring a mistrial. *See Rebolledo-Delgadillo*, 820 F.3d at 877–78.

### D. Dual Testimony

Cosby argues that Agent Landau testified in a "dual ca-pacity," both as an expert and a fact witness, and that the dis-trict court took inadequate precautions in allowing the jury to hear her dual testimony. Cosby admittedly did not raise this claim below, so we review for plain error. *See United States v. Corrigan*, 912 F.3d 422, 427 (7th Cir. 2019). There was none.

Initially, it is not plain that Agent Landau even testified as a fact witness. That she had a firsthand connection to the in-vestigation does not necessarily mean that she offered fact tes-timony about it. *See United States v. Boliaux*, 915 F.3d 493, 496–97 (7th Cir. 2019) (explaining that the jury understood the wit-ness to be testifying only as an expert). The government re-called Agent Landau to clarify her earlier testimony and to enable Cosby to impeach her on it, not to elicit factual support of its case.

Regardless, even if Agent Landau were a fact witness, the circumstances below ameliorated any risks associated with dual testimony—for example, the agent's supposed factual testimony occurred several days after her expert testimony and the court instructed the jury about proper consideration of the agent's expert opinion. *See United States v. Jett*, 908 F.3d 252, 268 (7th Cir. 2018). Moreover, even if there were plain er-ror, it did not affect Cosby's substantial rights. To the extent Agent Landau offered any facts regarding her minor investi-gation in the case, those facts were corroborated throughout trial and undisputed by the defendant himself when he testi-fied, and the evidence of guilt was "convincing," making any error harmless. *Id.* at 270.

**E. Motion to Suppress**

Finally, Cosby argues that the district court erred in denying his motion to suppress evidence seized from his cell phone. He argues that the warrant, though authorizing seizure of the device, did not authorize the agents to view its contents. But Cosby recognizes that his argument is foreclosed by this court's decision in *United States v. Fifer*, 863 F.3d 759 (7th Cir. 2017), on which the district court relied. *Fifer* held that a state warrant that explicitly authorized the police to seize an electronic device additionally "implicitly authorized them to search those devices as well." *Id.* at 766. Cosby's citation to out of circuit precedent is unavailing.

### III. Conclusion

The judgment of the district court is AFFIRMED.