In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1322

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD BOLIAUX,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 115 — **Manish S. Shah**, *Judge.*

ARGUED FEBRUARY 4, 2019 — DECIDED FEBRUARY 12, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Between 2002 and 2008 Edward Boliaux operated EMC Automotive, a used-car dealership, in Joliet, Illinois. He borrowed money from three lenders, using inventory as security. Most loans were secured by the cars' certificates of title, a device called floorplanning. Because there is supposed to be only one title certificate per car, the dealer cannot transfer good title to a customer with-

out paying the lender. Although lenders may allow sales to precede payment, they demand that the money be held in trust until the loan is retired. But beginning in 2007 Boliaux persuaded state officials to issue duplicate certificates of title on the pretense that the originals had been lost. He used these to obtain multiple loans against single vehicles, exceeding the cars' market value and leaving the lenders undersecured. He also began to sell cars without using the proceeds to repay the loans. After one of the lenders detected this and impounded the collateral, Boliaux persuaded the custodian to release eight cars, which he sold for his own benefit.

Deceit continued after EMC Automotive collapsed. In September 2008 Cindy Boliaux, then Edward's wife, incorporated Joliet Motors, which Edward operated from the premises formerly occupied by EMC. Joliet Motors received installment payments sent by the customers of EMC yet did not remit them to lenders. Boliaux had trouble borrowing against the inventory of his new dealership, and in 2008 and 2009 he turned to check kiting.

For these and related acts, a jury convicted him of four counts of wire fraud and six of bank fraud. 18 U.S.C. §§ 1343, 1344. He has been sentenced to 48 months' imprisonment and three years' supervised release.

Boliaux contends that the evidence was insufficient—on the wire fraud counts principally because he did not transmit anything by wire, and on the bank fraud counts principally because no one from the banks testified that the banks lost money. The district court addressed these and other contentions when denying Boliaux's motion under Fed. R. Crim. P. 29:

Viewed in the light most favorable to the prosecution, *see United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999), the evidence demonstrated that Boliaux obtained financing from lenders through materially false representations, and he perpetuated his scheme through the concealment of material facts. Boliaux argues that the evidence amounted to, at most, a disjointed series of immaterial breaches of contract. Neither the facts nor the law support this argument. Obtaining money through a scheme intended to cheat others is a crime whether or not it is also sloppy business or breach of contract. It suffices to note that Boliaux lied to obtain duplicate titles for cars that he knew were financed by one lender, and used the duplicate titles to obtain additional financing from a second lender—thereby compromising the security interests of both lenders. Later, he forged lien releases purportedly from GMAC, and with those releases, obtained car titles that he used to secure more financing—thereby cheating those lenders by concealing GMAC's interests. According to industry representatives, clear title to a vehicle that was part of floorplan financing was material to lenders, even when liens were not individually filed and notwithstanding the breadth of the collateral securing financing. The evidence of defendant's control over the car dealerships was sufficient to prove his intentional participation in the scheme. His intent to defraud was manifest in his false statements and forgeries, and in his concealment of facts associated with Joliet Motors. The charged wire transmissions traveled across state lines—from Joliet Motors in Illinois and routed through Pennsylvania or Ohio, and they advanced the scheme to defraud the lenders because they were payments for a vehicle that had been sold to the detriment of the lender's interests. The evidence of Boliaux's supervision of Joliet Motors, and his involvement in the payment-processing system, was sufficient to make the wire transmissions a foreseeable consequence of his scheme.

Testimony from the victim banks was not necessary to support a conviction on the bank fraud counts. The bank records, coupled with the explanatory testimony of expert witness Wolverton (who testified under Rule 702 without objection) and the evidence of Boliaux's control over the bank accounts, demonstrated

> the risk of loss to the banks and Boliaux's intent to deceive through check kiting.
>
> The evidence was not just sufficient, it was overwhelming, and defendant's motion for a judgment of acquittal under Rule 29 is denied.

It is not necessary to say more about the sufficiency of the evidence. Later we discuss the decision by Boliaux's lawyer to omit from his brief the district court's analysis of this subject.

Boliaux asked the district judge to instruct the jury that it had to agree, unanimously, how he carried out his scheme to defraud. The judge properly declined. Each wire-fraud count of the indictment charged a single scheme to defraud implemented in 17 ways (obtaining duplicate titles by falsely asserting that others had been lost, pledging the same car to multiple lenders, selling cars without repaying the loans, and so on). The means used to carry out a fraudulent scheme are not separate elements requiring unanimity. See, e.g., *Richardson v. United States*, 526 U.S. 813, 817 (1999). Boliaux seeks to avoid this rule by contending that the wire-fraud charges are duplicitous—in other words, that each count really charges multiple crimes, rather than one crime committed through multiple acts. The district court addressed this argument, too, in the order from which we have already quoted:

> Boliaux raises an untimely argument concerning duplicity, but he never challenged the indictment under Rule 12(b)(3)(B)(i) and offers no excuse for this failure. The claim is forfeited, but in any event, there was no duplicity, much less prejudicial duplicity. Each wire fraud count alleged one execution of a single scheme to defraud with a variety of alleged means. No unanimity with respect to those means was required. *United States v. Daniel*, 749 F.3d 608, 614 (7th Cir. 2014).

Thus Boliaux lost in the district court on two grounds: forfeiture and the merits. His opening brief on appeal ignores the forfeiture. If you lose in the district court on multiple grounds, you must contest all on appeal; prevailing on one won't suffice. After the prosecutor relied on the forfeiture ruling, Boliaux finally addressed it in his reply brief. That's too late—and as it happens too little as well.

Federal Rule of Criminal Procedure 12(b)(3) lists more than a dozen defenses or arguments that must be presented before trial, so that any error may be corrected (and the prosecutor can appeal an adverse decision without encountering a problem under the Double Jeopardy Clause). See *United States v. Nixon*, 901 F.3d 918, 920–21 (7th Cir. 2018). Duplicity is among them. There is an escape hatch: "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). The district judge stated that Boliaux has not offered an excuse for his delay. That remains true. The reply brief does not contend that Boliaux had "good cause"—or indeed any cause—for raising a duplicity argument only in mid-trial. The decision may well have been strategic, deferring matters until it was too late for the prosecutor either to amend the indictment or appeal from an adverse decision. This is exactly the kind of strategy that Rule 12(b)(3) is designed to block.

Not content with holding back a duplicity argument until mid-trial, Boliaux withheld a multiplicity argument until his opening appellate brief. Multiplicity means charging a single crime in multiple counts. Boliaux tells us that he committed at most one bank fraud, no matter how many checks he

wrote against insufficient funds, making the six bank-fraud counts multiplicitous. Yet multiplicity is among the matters that must be raised before trial. Fed. R. Crim. P. 12(b)(3)(B)(ii). Consideration of the argument now depends not only on a demonstration of plain error (the standard for all contentions first presented on appeal) but also on a demonstration of good cause. Boliaux does not argue that he had good cause—or any cause at all—for delay in making this argument. We therefore do not consider it.

One evidentiary contention requires a few words. John Brincat appeared for the prosecution as an expert witness on the topic of floorplanning. He explained to the jury how these loans are made and why lenders' risk is increased by the existence of multiple title certificates and multiple loans against a single vehicle. The district judge found this testimony proper under Fed. R. Evid. 702. Still, Boliaux contends that the testimony should have been barred because Brincat acted as both an expert witness and a fact witness, a dual role that may leave the jury confused about how to treat the testimony. See, e.g., *United States v. Jett*, 908 F.3d 252, 267–68 (7th Cir. 2018). The district court disagreed, stating: "The testimony elicited by the government from witness Brincat was limited to his role as an industry expert and did not stray into fact-witness territory". Boliaux contests this by observing that Brincat testified about how the whole floorplan-lending industry works, and Boliaux insists that because Brincat is employed by Automotive Finance Corp. (AFC), one of the defrauded lenders, the jury likely would have understood him to be a fact witness.

The district judge did not abuse his discretion by permitting Brincat to testify. He did not describe any special fea-

tures of AFC's practices or any of the dealings between AFC and Boliaux. The jury surely understood Brincat to be testifying exclusively as an expert. We are surprised that the prosecutor would present Brincat as an expert, enabling the defense to paint a vital witness as biased, but puzzling decisions do not make evidence inadmissible.

Boliaux presents a few additional arguments, which do not require discussion. They have been considered and are rejected.

We promised earlier to return to how Boliaux has treated the district court's explanations for its decisions. Circuit Rule 30(b)(1) requires every appellant to include, in an appendix to the brief, "[c]opies of any … opinions, orders, or oral rulings in the case that address the issues sought to be raised." Circuit Rule 30(d) adds: "The appendix to each appellant's brief shall contain a statement that all of the materials required by parts (a) and (b) of this rule are included." Boliaux's brief, signed by Andrew S. Gable of Chicago, contains the required certification. But it is false. The appendix omits the district court's statement of its reasons for finding the evidence sufficient, finding the duplicity argument (and the proposed unanimity instruction) forfeited under Rule 12(b), and permitting Brincat to testify. (The opinion addresses other topics as well.) The appendix also omits substantial parts of the district judge's mid-trial discussions of these and other issues. Was Gable hoping that we would not discover those rulings?

False representations to the court of appeals have consequences. In civil litigation a false certificate of compliance with Circuit Rule 30(a) and (b) leads to summary affirmance or dismissal of the appeal. See, e.g., *Urso v. United States*, 72

F.3d 59, 61–62 (7th Cir. 1995); *Mortell v. Mortell Co.*, 887 F.2d 1322, 1327 (7th Cir. 1989); *Teitelbaum v. Curtis Publishing Co.*, 314 F.2d 94, 95–96 (7th Cir. 1963); *Sparrow v. Yellow Cab Co.*, 273 F.2d 1, 4 (7th Cir. 1959); *Chicago & Eastern Illinois Ry. v. Southern Ry.*, 261 F.2d 394, 400 n.7 (7th Cir. 1958). The client then may be able to recover from counsel for malpractice. We concluded in *United States v. Smith*, 953 F.2d 1060, 1068 (7th Cir. 1992), that this would not be appropriate in criminal cases, where defendants have difficulty monitoring their lawyers' performance—and where dismissal of the appeal or summary affirmance would lead straight to a decision finding that counsel had furnished ineffective assistance, which would authorize a new appeal. It is best in criminal cases to give the defendant plenary appellate review, as we have done, and penalize the lawyer directly. See *In re Galvan*, 92 F.3d 582 (7th Cir. 1996). See also *Guentchev v. INS*, 77 F.3d 1036 (7th Cir. 1996) (same approach in immigration law).

*Galvan* established $1,000 as the presumptive fine for a violation of Circuit Rule 30 in a criminal case. 92 F.3d at 584–85. See also, e.g., *United States v. Evans*, 270 F.3d 1076, 1085 (7th Cir. 2001). Adjusting for inflation, $1,000 in 1996 is equivalent to $1,597 today. This implies that the presumptive fine should become $1,600.

Counsel has 14 days to show cause why he should not be fined $1,600, and reprimanded, for his violation of Circuit Rule 30(b) and his false statement under Circuit Rule 30(d).

The judgment is affirmed, and an order to show cause will be issued.