In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 19-1171

ANTOINETTE WONSEY,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-09936 — **Sara L. Ellis**, *Judge.*

———————

ARGUED SEPTEMBER 16, 2019 — DECIDED OCTOBER 15, 2019

———————

Before BAUER, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Antoinette Wonsey's Chicago home attracted two types of visitors: tourists and police. The tourists came for short-term lodging, which Wonsey sublet through Airbnb. The police first came after an Airbnb guest reported a theft at Wonsey's home. Five days later, police showed up again to help city examiners during a building inspection. Claiming these two police encounters amounted to Fourth Amendment violations, Wonsey sued the City of

Chicago and several police officers under 42 U.S.C. § 1983. The district court granted summary judgment to the defendants. On appeal, Wonsey submits a bare explanation of the police encounters, and she makes no effort to connect them with a cognizable Fourth Amendment claim. Because Wonsey fails to show any reason why the district court's judgment should be disturbed, we affirm.

**I**

On June 4, 2016, an Airbnb guest of Wonsey's reported to police that his personal belongings, including cash and a laptop computer, disappeared after he lost consciousness from a seizure. Chicago Police Sergeant Antonio Valentin drove to Wonsey's house to investigate and arrived at 8:30 a.m. The front gate to Wonsey's house was locked, and no one responded when Valentin rang the doorbell. He then attempted to open the gate by reaching his arm around and trying to open it from the inside. When that did not work, Valentin called the police station and spoke with the theft victim, who gave Valentin the entry code to unlock the gate.

After opening the gate, Valentin went to the front door, knocked, and rang the doorbell. Two men opened the door and, as shown in Wonsey's home security video footage, allowed Valentin inside. Shortly after, another officer arrived to assist. The officers saw residents scattered throughout the first floor who appeared to have been sleeping in the living room areas. As Valentin discussed the theft victim's claim with the residents, Wonsey, who had been asleep until that point, entered the dining room and joined the conversation. After Valentin asked Wonsey for permission to see where the theft victim was staying, Wonsey refused and told the officers to leave. The officers complied and Wonsey walked them

outside. Although Valentin felt Wonsey acted "evasive," he described his conversation with her as "friendly" and "cordial." At no point during this encounter did the officers arrest Wonsey, search her home, or tell her she was not free to leave.

Five days later, on June 9, and prompted by a police request, the city's buildings department sent out a team of inspectors to Wonsey's house. They were accompanied by five police officers. On arrival, the inspectors found Wonsey's front gate was locked, so they visually inspected the exterior of her house where they saw a man sitting on Wonsey's back porch. The inspectors explained why they were there, and the man opened the back gate to let them in. They entered, walked to the front of the house, and met Wonsey, who willingly allowed the inspectors into her home. Home security video footage corroborated Wonsey's grant of permission. The police officers waited outside during the inspection.

The inspectors recorded 32 code violations and concluded the house should be immediately evacuated. Including Wonsey, at least eight occupants were in the house that morning and the inspection report speculated 12-18 occupants resided there. Due to "dangerous conditions in the home," the inspectors asked the police to assist with "emergency evacuations." At that point the officers entered the house and stayed in the common areas. As Wonsey explains it, the officers "surrounded her" in the dining room. Defendants alleged Wonsey was "irate," "very ballistic," "screaming," and "yelling." She denies these characterizations. Wonsey agrees no police officer placed her in handcuffs or told her she was not free to leave. She also admits she refused to leave despite being asked to do so as part of the evacuation order.

Wonsey sued the city and some of the police officers under 42 U.S.C. § 1983 for the June 4 and June 9 encounters. She claimed defendants' actions violated her Fourth Amendment right to be free from unreasonable searches and seizures. After discovery defendants moved for summary judgment. On Wonsey's June 4 claims, defendants argued: (1) Valentin had consent to enter Wonsey's home to investigate the stolen property report; and (2) Wonsey presented no evidence of a Fourth Amendment seizure.[1] On the June 9 claims defendants contended the doctrine of qualified immunity shielded all the officers' actions that day. The district court agreed with defendants across the board and granted summary judgment in their favor. Wonsey appeals that decision.

## II

"The purpose of an appeal is to evaluate the reasoning and result reached by the district court." *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 690 (7th Cir. 2018). A party asking this court to reverse a district court's judgment must "argue why we should reverse that judgment" and "cite appropriate authority to support that argument." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). That task starts with the appellant's brief. *See* FED. R. APP. P. 28.

Although appellate briefs should embrace brevity, Wonsey's initial brief is extraordinarily sparse. Critically, the "argument" section, which runs only two and a half pages, does not attempt to show how the district court erred. More importantly, it never addresses her Fourth Amendment claims. *See*, *e.g.*, *Sambrano v. Mabus*, 663 F.3d 879, 881 (7th Cir.

---

[1] Wonsey sued only Valentin for the June 4 encounter. She did not name Valentin's backup officer as a defendant.

2011) (censuring similarly deficient brief). Instead, almost all the section is poached from a law review article about qualified immunity that Wonsey's counsel failed to cite. This was not an instance of less than perfect citation, but rather copying an academic work without any attribution. Even the article's footnotes appear as citations in the body of Wonsey's brief. And the real puzzler is that Wonsey does not explain how the copied article pertains to her case, and she makes no attempt to apply its reasoning.

This is a highly problematic strategy by Wonsey's counsel given that arguments raised for the first time in a reply brief are waived. *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006). The same goes for arguments not raised until oral argument. *See In re Dorner*, 343 F.3d 910, 915 (7th Cir. 2003) ("Lawyers must get these things straight before the briefing is complete; otherwise the opposing party and the appellate judges must traverse the same ground twice."). Pretermitting whether this meager effort constitutes forfeiture of Wonsey's appeal, *see Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018), we proceed as best we can on the merits with what little was offered.

### III

We review a district court's grant of a motion for summary judgment de novo, interpreting all facts and drawing all reasonable inferences in favor of the nonmoving party. *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460, 465 (7th Cir. 2018). Because Wonsey brought her claims under 42 U.S.C § 1983, to survive summary judgment, she must present sufficient evidence to create a genuine dispute of material fact that a constitutional deprivation occurred. *Homoky v. Ogden*, 816 F.3d 448, 452 (7th Cir. 2016).

**A**

We start with Wonsey's June 4 unlawful search and sei-
zure claims. The Fourth Amendment generally prohibits the
warrantless entry of a person's home to perform a search or
seizure. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)
("[S]earches and seizures inside a home without a warrant are
presumptively unreasonable."); *Illinois v. Rodriguez*, 497 U.S.
177, 181 (1990). But the prohibition does not apply when vol-
untary consent has been obtained, either from the individual
whose property is searched, or from a third party who pos-
sesses common authority over the premises. *Rodriguez*, 497
U.S. at 181. When a person allows a third party to exercise au-
thority over his property, he assumes the risk that the third
party might permit access to others, including government
agents. *United States v. Terry*, 915 F.3d 1141, 1145 (7th Cir.
2019) (citations omitted). In a § 1983 case, once the defendant
presents evidence that the plaintiff consented to the search,
the burden shifts to the plaintiff to establish the lack of con-
sent to search. *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir.
1997).

Here, defendants presented two pieces of evidence show-
ing Wonsey's guests gave their consent to enter Wonsey's
house. First, Wonsey's Airbnb guest gave Valentin the gate
code to enter the front patio and investigate the alleged theft.
Wonsey agrees she gave her gate code to Airbnb guests to use
freely. Second, when Valentin arrived at the front door, he
rang the doorbell, and two men answered. After Valentin
identified himself and explained why he was there, the two
men allowed Valentin inside. Wonsey's security video shows
this. Because defendants presented evidence of consent, the

burden shifts back to Wonsey to show Valentin never obtained consent or the consent was invalid.

Wonsey fails to rebut that evidence, let alone address the issue of consent. Instead, she offers only a conclusion that "admissible evidence shows a genuine dispute as to a material issue of fact." But Wonsey never cites to the record or any fact in dispute to support this assertion. She also says a district court "should not decide … who is lying or telling the truth … on a motion for summary judgment." It is true that "[a] trial, not summary judgment, is the way to determine who is telling the truth." *Owens v. Chicago Bd. of Educ.*, 867 F.3d 814, 816 (7th Cir. 2017). But Wonsey does not explain which witness is "lying," what fact they are lying about, or which claims are implicated by the purported lies. Without evidence to contradict defendants' proof of consent, Wonsey cannot show Valentin's entry constituted an unreasonable search.[2]

Wonsey's unlawful seizure claim also fails. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 381

---

[2] Before the district court, Wonsey alleged "Valentin opened the front gate, walked up to the front door, rang the doorbell, knocked on the window or door, and entered in the property, all in approximately 19 seconds." She claimed that was not enough time for Valentin to obtain consent to enter. After reviewing the security footage, the district court disagreed and found "there was plenty of time for Valentin to introduce himself and obtain consent." At any rate, Wonsey neither raises this argument on appeal nor submits any argument that the court erred in its finding.

(2007)). But Wonsey never explains when that moment occurred here. And she agrees the officers left immediately after she asked them to leave. Given those circumstances, with no additional facts to indicate that Wonsey did not feel free to go about her business, there is no genuine issue of material fact as to whether the officers "seized" Wonsey on June 4.

## B

The district court rejected Wonsey's June 9 search and seizure claims based on qualified immunity. To challenge that decision, Wonsey's counsel lifted content from a law review article which suggests qualified immunity makes governments less accountable. From that premise, Wonsey boldly proposes this court should scrap the doctrine of qualified immunity. The Supreme Court, however, continues to apply the doctrine and recently reiterated its "settled principles." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). Wonsey's request effectively asks us to ignore the structure of Article III courts and follow the lead of unnamed "federal courts scholars."

We pass on Wonsey's proposal and follow the Supreme Court. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (citations omitted). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (citation and internal quotation marks omitted). Under this standard, we "focus[] on the objective legal reasonableness of an official's acts."

*Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Thus, defendants here enjoy qualified immunity "if a reasonable officer could have believed," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam), that the officers' entry into Wonsey's home on June 9 was constitutional.

Construing the facts in Wonsey's favor, *see Dayton*, 907 F.3d at 465, we assume her version of events on June 9. After Wonsey allowed the building inspectors into her home, they recorded 32 code violations and concluded the house was unsafe for occupancy. Due to those "dangerous conditions," the inspectors ordered all occupants to evacuate immediately and asked police officers onsite to help with the evacuation. The officers obliged and, according to Wonsey, "surrounded her" in the dining room and told her to leave the house.[3] Wonsey acknowledges, however, the officers entered her home "due to safety concerns." And she does not dispute that police: (1) relied on the inspectors' representations that the building was a danger to its occupants and the public; (2) took the inspectors' findings seriously; and (3) acted consistent with the intent to carry out the evacuation order. Likewise, she does not allege police searched any part of her home during the evacuation.

Because Wonsey does not tell us which facts she believes amounted to Fourth Amendment violations, we can only presume the officers' entry to help with the evacuation prompts her illegal search claim, and "surrounding her" prompts her illegal seizure claim. In any event, those claims fail. Wonsey does not dispute police entered her house at the request of

---

[3] We also assume Wonsey was not "irate," "ballistic," "screaming" and "yelling" at defendants, which defendants allege and she denies.

inspectors, who were lawfully present, to help with an evacuation given an immediate safety concern. Under those circumstances, a reasonable officer could have believed that entry was lawful. Wonsey offers no contrary argument, and she does not point to any violation of statutory or constitutional rights, much less clearly established ones. So qualified immunity cloaks defendants' actions on June 9.

One final issue warrants discussion. Circuit Rule 30(a) requires an appellant to include, "bound with the main brief, an appendix containing the judgment or order under review and any opinion, memorandum of decision" or other equivalent statement of reasons. Rule 30(d) requires counsel to certify compliance with Rule 30(a). Wonsey's counsel included a Rule 30(d) certificate, but failed to include a copy of the district court's judgment (although counsel did include a copy of the district court's opinion). Under FED. R. CIV. P. 58, the judgment is distinct from the opinion, *see Klein*, 884 F.3d at 757, and for the Rule 30(d) certificate to be true, the judgment must have been included. This court does not take counsel's omission and misrepresentation lightly. *See United States v. Boliaux*, 915 F.3d 493, 497 (7th Cir. 2019) (requiring counsel to show cause why he should not be fined $1,600, and reprimanded for his false statement under Circuit Rule 30(d)); *United States v. Patridge*, 507 F.3d 1092, 1096 (7th Cir. 2007) ("This court regularly fines lawyers who violate Circuit Rule 30 yet falsely certify compliance under Circuit Rule 30(d)."). Counsel is strongly admonished to observe all court rules in the future.

## IV

Wonsey's arguments on appeal are best summed up as unsupported, careless, and irrelevant. Above all, they fail to

show an issue of material fact to preclude summary judgment. For these reasons, we AFFIRM.