In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1732

KENNETH DUNN,

*Plaintiff-Appellant,*

*v.*

LEO SCHMITZ, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:16-cv-03308 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 25, 2023 — DECIDED JUNE 6, 2023

Before RIPPLE, ST. EVE, and PRYOR, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Kenneth Dunn, a former lieutenant
with the Illinois State Police ("ISP"), believes that the ISP
wrongly designated him "not in good standing" upon his re-
tirement. This designation limits his rights to carry a con-
cealed weapon under federal and state law. Moreover, he
claims that, if prospective employers learn of his designation,
he will be disqualified from future positions in law enforce-
ment and private security. Mr. Dunn therefore brought this

action against three ISP superiors for violating his right to due process under the Fourteenth Amendment by depriving him of a liberty interest in future employment. The district court entered summary judgment for the defendants.

We affirm that judgment. Regardless of whether the designation is justified, Mr. Dunn lacks evidence that the defendants disclosed his designation or foreclosed his future job prospects.

# I

## BACKGROUND

When reviewing the grant of summary judgment, we construe the facts in the light most favorable to Mr. Dunn, the nonmoving party. *See Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021). While he was an ISP lieutenant, Mr. Dunn was assigned to work at the Illinois Gaming Board under an inter-governmental agreement. According to his superiors, federal agents informed the ISP that he was implicated in a federal criminal investigation into mortgage fraud. In September 2014, therefore, the ISP placed him on restricted duty. He could perform administrative work but could not carry out enforcement or operational responsibilities, such as arrests. The ISP's director sent Mr. Dunn a letter notifying him that his status would "change to restricted duty pending the completion of a criminal investigation."[1] The ISP placed the letter in his personnel file and sent copies to those within Mr. Dunn's chain of command and to the ISP's legal and administrative offices.

Defendant Joann Johnson, a deputy director of the ISP's Division of Internal Investigations ("DII"), later stated under

---

[1]R.20-4 at 1; R.20 at 2–3.

oath that the ISP records reflected that at the time he was placed on restricted duty, Mr. Dunn was the "subject of a federal criminal felony investigation" and that the investigation was still open when he retired.[2] She based this on "the DII investigative casefile on Lt. Dunn, as well as emails summarizing conversations with federal agents and prosecutor [sic] conducting the criminal investigation."[3] Mr. Dunn admits that he participated in a voluntary interview with federal investigators, but he denies that he was under investigation. Indeed, he claims that the ISP was never told that he was a "target."[4] The record does not contain documents supporting the ISP's notation that he was the "subject" of an investigation.[5] According to an ISP official, the ISP "could not obtain any additional documentation" before placing Mr. Dunn on restricted duty because of "limitations with federal grand jury regulations."[6]

---

[2] R.20-9 at 3.

[3] *Id.*

[4] R.22 at 3.

[5] We take judicial notice of the United States Department of Justice's definitions of the terms "subject" and "target" for purposes of grand jury investigations. According to the Department's *Justice Manual*, a "target" is "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime" and who is thus "a putative defendant"; a "subject," by contrast, is "a person whose conduct is within the scope of the grand jury's investigation." U.S. Dep't of Just., Just. Manual § 9-11.151 (2020).

[6] R.20-5 at 24:22–25:10.

In November 2016, Mr. Dunn filed this action under 42 U.S.C. § 1983 against three individuals in their personal and official capacities: Ms. Johnson; Isaiah Vega, the ISP supervisor of personnel assigned to the Illinois Gaming Board; and Leo Schmitz, the successor to the ISP director who signed Mr. Dunn's letter. He alleged that the defendants had violated his right to due process under the Fourteenth Amendment by depriving him of a liberty interest in future occupational opportunities. He asserted that he was not the "subject," let alone "target," of any federal investigation at the time the defendants placed him on restricted duty. Nevertheless, the defendants, he continued, had notified third parties that the ISP had stripped him of his law-enforcement authority. He further alleged that the defendants had deprived him of any opportunity for a name-clearing hearing. Accordingly, he asked the court to grant him relief by ordering such hearing and by awarding him damages and attorney fees.

While the lawsuit was pending, Mr. Dunn remained on restricted duty until his retirement in December 2016. At that point, the ISP notified him that, because he retired while on restricted duty, he would be categorized as "not in good standing" at retirement.[7] That letter also explained that this status affected, among other things, his eligibility to carry a concealed weapon under 18 U.S.C. § 926C, a provision of federal law that applies to "qualified retired law enforcement officer[s]." Mr. Dunn appealed the good-standing determination within the ISP, but in February 2017, Mr. Schmitz upheld the decision.

---

[7] R.20-6 at 1.

The defendants moved for summary judgment, contending that Mr. Dunn had failed to establish that they had violated his right to due process. They submitted that Mr. Dunn had not presented evidence that they had disclosed publicly that he was not in good standing or that he had lost employment opportunities from the disclosure of any stigmatizing statement.

Mr. Dunn responded that his lack of good standing easily could be disclosed to third parties. Specifically, he expressed concern that prospective employers could submit a request for this information under the Freedom of Information Act, 5 U.S.C. § 552, or its state equivalent, 5 ILCS 140/1 *et seq*. Mr. Dunn stated, moreover, that any prospective employer was certain to seek information about his retirement status, and that all law enforcement organizations in Illinois could learn of his lack of good standing by searching a database maintained by the Illinois Law Enforcement Training Standards Board ("Standards Board"). Mr. Dunn also reiterated that he was never the subject of a federal investigation, and he provided a letter, dated May 30, 2019, from an Assistant United States Attorney stating that he was not being investigated currently and that he was never a "target" of a federal investigation.[8]

Mr. Dunn further submitted that his lack of good standing disqualified him from many law-enforcement and private-security positions, which, he claimed, "would require him to carry a concealed weapon under federal law."[9] Although

---

[8] R.22-1 at 5.

[9] R.22 at 10–11.

Illinois law provides for concealed-carry permits for private individuals, *see* 430 ILCS 66/1 *et seq.*, it is easier for retired law enforcement officers to obtain a concealed-carry permit under both state and federal law, *see* Ill. Admin. Code tit. 20, § 1720.240(b); 18 U.S.C. § 926C. Because of his designation, this less restrictive route was not open to Mr. Dunn. However, Mr. Dunn has a Firearm Owner's Identification Card, so he may lawfully possess or acquire firearms. *See* 430 ILCS 65/2(a)(1).

The district court entered summary judgment for the defendants. It concluded that Mr. Dunn lacked evidence that they had publicly disclosed stigmatizing information about him. Public disclosure, the court explained, requires *actual* disclosure, but Mr. Dunn pointed to only the possibility of disclosure.

Mr. Dunn timely appealed.

## II

## DISCUSSION

A government employer infringes an employee's occupational liberty interest when, without constitutionally adequate process, it places the employee's "good name, reputation, honor, or integrity" at stake or imposes "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972) (citations omitted). To succeed on an occupational liberty claim, an employee must prove that: "(1) he was stigmatized by the employer's actions; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure."

*Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005) (citing *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992)). Mr. Dunn contends that he raised a genuine issue of material fact as to each of these elements. In his view, his evidence shows that it is inevitable that the stigmatizing designation will reach prospective employers and will prevent him from obtaining employment in his field. Our review of the summary judgment ruling is de novo. *Perry*, 990 F.3d at 511.

The parties dispute whether Mr. Dunn was involved in a federal criminal investigation as a "target," a "subject," or otherwise. This issue is relevant to whether Mr. Dunn can satisfy the first element of his claim—stigma. Stigmatizing statements "must be false assertions of fact." *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998).[10] However, we need not decide whether Mr. Dunn has made out a triable issue on this element because his claim fails on the remaining elements. *See Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991).

Regarding the element of public disclosure, our cases have not "delineate[d] exactly how plaintiffs must prove dissemination." *Id.* at 17. But we have said that potentially stigmatizing information has not been "made public" if it "remains in a discharged employee's personnel file and has not been disseminated beyond the proper chain of command within the

---

[10] Because Mr. Dunn continues to emphasize the inaccuracy of the reason given for his placement on restricted duty, we asked at oral argument whether any state remedies were available for him to challenge that decision (which led directly to the unfavorable retirement status). The parties were unable to give us a firm answer, but we do know that Mr. Dunn did not pursue any other state remedies after receiving a final determination from the ISP.

police department." *Id.*; *see also Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997). In this case, although Mr. Dunn speculates about disclosures, he does not point to evidence that the defendants actually disclosed his not-in-good-standing designation outside the ISP chain of command and his personnel file.

Mr. Dunn submits that he has satisfied the public disclosure element because the defendants admitted to disclosing his unfavorable designation to the Standards Board. Even if we assume that such a disclosure would satisfy the public disclosure requirement, Mr. Dunn overstates his evidence on this point. In their answer to his complaint, the defendants admitted only that "the good standing determination *may be* shared between the Illinois State Police and the Illinois Law Enforcement Training Standards Board."[11] There is no evidence in the record that this determination in fact *was* disclosed to the Standards Board.

Setting aside actual disclosure, Mr. Dunn insists that he succeeds under the constructive dissemination test of *Dupuy*, 397 F.3d at 510. There, we held that the disclosure element was met even though there had not been actual transmission of the information because dissemination was inevitable. The plaintiffs, who were subject to findings of past child abuse or neglect, were required by statute to authorize disclosure of this information when seeking employment in their chosen field of childcare. *Id.*

Unlike the *Dupuy* plaintiffs, Mr. Dunn has not pointed to evidence showing that he *must* disclose his retirement status

---

[11] R.7 at 5 (emphasis added).

to any prospective employer.[12] Nor has he shown that prospective employers would *require* him to apply for and obtain the retired-law-enforcement version of a concealed-carry permit. At most, Mr. Dunn established that employers in the fields of law enforcement or private security might inquire into his retirement status in a background check and might require him to possess some form of concealed-carry permit. But the mere likelihood of public disclosure is not enough to satisfy the disclosure element under our precedents. *See John-son*, 943 F.2d at 16–17. Notably, we have already rejected the holdings of some of the out-of-circuit decisions that Mr. Dunn cites to support a more relaxed version of the constructive dissemination test. *See, e.g.*, *Olivieri*, 122 F.3d at 408–09 (distinguishing between an employer who "goes out of his way to publicize the ground of the dismissal" and an employer who "does not disclose, let alone publicize, the ground of its action").[13]

---

[12] At oral argument and in his reply brief, Mr. Dunn suggested that disclosure is mandated under the Illinois Police Training Act, 50 ILCS 705/9.2, which became effective in January 2022. Even if we assume that this provision applies retroactively to Mr. Dunn's retirement designation five years earlier, he has waived this argument by failing to raise it in his opening brief. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398–99 (7th Cir. 2019).

[13] Our sister circuits have expressed conflicting views. *Compare Burton v. Town of Littleton*, 426 F.3d 9, 17 (1st Cir. 2005) ("[T]he placement of damaging information in a personnel file, without further dissemination, is not sufficient to trigger the constitutional tort."); *Ortega-Rosario v. Alvarado-Ortiz*, 917 F.2d 71, 74–75 (1st Cir. 1990) (same); *Copeland v. Philadelphia Police Dep't*, 840 F.2d 1139, 1148 (3d Cir. 1988) (finding insufficient plaintiff's allegation that "the presence of information relating to his termination in his personnel file raises an inference that the city intends to communicate this information to prospective employers"), *with Segal v. City of New York*,

Nor can Mr. Dunn prove disclosure based on the general availability of stigmatizing information through transparency laws such as the Freedom of Information Act. Even if the defendants placed stigmatizing information "in documents available to the public under the Illinois Freedom of Information Act," "that information is not publicly disseminated where it may be, but has not yet been, disclosed to third parties." *RJB Properties, Inc. v. Bd. of Educ. of City of Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006) (citing *Olivieri*, 122 F.3d at 408, and *Johnson*, 943 F.2d at 17); *see also Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir. 1992) (citing *Clark v. Maurer*, 824 F.2d 565, 567 (7th Cir. 1987)) (emphasizing that although information in personnel files may be a "ticking time bomb," there is no claim "until the bomb explodes"). Furthermore, there are numerous exemptions to the Freedom of Information Act that could apply, making Mr. Dunn's premise—that anyone who asks could learn facts related to his employment with the ISP—less certain than he assumes.

The public disclosure element is not the only one about which Mr. Dunn lacks sufficient evidence: he also did not show that the defendants' conduct foreclosed practically all

---

459 F.3d 207, 213 (2d Cir. 2006) ("[T]he placement of statements in an employee's personnel file may satisfy the … public disclosure element[]."); *Sciolino v. City of Newport News*, 480 F.3d 642, 650 (4th Cir. 2007) ("A plaintiff need not allege that his file has actually been disseminated to particular prospective employers."); *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004) (stating that where disclosure was mandated upon request, "[p]ublication of the stigmatizing information occurred, if at all, when the termination letter was placed into and maintained in Cox's personnel file").

his prospective employment opportunities.[14] Success on an occupational-liberty claim "requires 'that the circumstances made it virtually impossible for [the plaintiff] to find a new position in his chosen profession.'" *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (quoting *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995)). Mr. Dunn testified that he refrained from applying for two security-related positions that required carrying a weapon, which he said he could not do because of his retirement status. But Mr. Dunn has not presented evidence establishing that he could not apply for a concealed-carry license as a private citizen under Illinois's Firearm Concealed Carry Act, 430 ILCS 66/1 *et seq.* Assuming he can obtain such a license, he has not established that only the license afforded to former law enforcement officers would be satisfactory to prospective employers.

In sum, Mr. Dunn has failed to present evidence that any law-enforcement or private-security employer has ever denied, or would deny, him a position because of his status. *See Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (holding that plaintiff, who had yet to be turned down by any potential employer, failed to show that prospective employment opportunities were foreclosed). On these facts, no reasonable jury could find that it would be "virtually impossible" for Mr. Dunn to obtain a job in his chosen field, making summary judgment for the defendants appropriate. *Id.*

---

[14] Although the district court did not rely on this factor, it was litigated at summary judgment and therefore can be grounds for affirmance. *See King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED