In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 25-1904

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OMARI ANDREWS, JR.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 23-cr-00170 — **Edmond E. Chang**, *Judge.*

---

ARGUED FEBRUARY 26, 2026 — DECIDED APRIL 15, 2026

---

Before EASTERBROOK, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* A jury convicted Omari Andrews, Jr., of possessing four firearms in furtherance of a drug trafficking crime. Andrews challenges the sufficiency of the evidence for his firearm conviction and the admission of certain expert testimony. The district court rejected both arguments when it denied Andrews's post-trial motions. We affirm.

## I. Background

A joint federal and local law enforcement investigation suspected that Omari Andrews, Jr., supplied drugs to a gang in Skokie and Evanston, Illinois. On five occasions, law enforcement conducted controlled buys of cocaine, heroin, and fentanyl from Andrews. Officers then obtained a warrant for Andrews's arrest, and a search warrant for an apartment in Mount Prospect, Illinois (the "Palm Drive apartment"). Andrews jointly occupied the Palm Drive apartment with his mother, who leased it, his younger brother, and other family.

In March 2023, law enforcement arrested Andrews. During the arrest, officers found nine small plastic bags containing heroin, fentanyl, cocaine, and a cocaine base in Andrews's pockets. Officers then searched the Palm Drive apartment, where they found more drugs and items associated with drug production and trafficking. They also found four firearms: (i) a Glock 19, (ii) a Glock 27, (iii) a Glock 19X, and (iv) an AR-style pistol.

While in custody, Andrews called his parents on a recorded jail phone. During the conversation, Andrews asked his parents, "you think they gonna hit me with a 922(c)," to which his father responded, "how many you had in [the] house?" Andrews replied, "[t]here was four … they wasn't together like one, you know what I'm saying? They was [in] different rooms."

A grand jury indicted Andrews on seven counts. Counts one through five charged him with distribution of a controlled substance, 21 U.S.C. § 841(a)(1), reflecting the five controlled buys. Count six charged him with possession with intent to distribute a controlled substance, § 841(a)(1), reflecting

the drugs found in Andrews's pockets. Count seven charged him with possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), listing the four firearms in the apartment. Andrews eventually pleaded guilty to the first five counts and proceeded to trial on counts six and seven.

During pretrial discovery, the government disclosed that its fingerprint analyst, Thomas Kern, analyzed fingerprints on the Glock 27 and the AR-style pistol (latent prints 3A and 4A, respectively) and matched both to Andrews's known fingerprints. In early July 2024, over a month before trial, the government confirmed it intended to call Kern as an expert at trial and disclosed Kern's qualifications, opinions, and the bases for those opinions.

Andrews did not disclose whether he planned to call an expert witness by either the July 15 witness list deadline or the July 30 final pretrial conference. Instead, days before trial (and well after the July 15 motion in limine deadline), Andrews moved to exclude, under Federal Rule of Evidence 702, Kern's testimony regarding his analysis of latent print 3A. Andrews relied on his own expert, who concluded Kern had "digitally manipulated" latent print 3A. Andrews did not move to exclude Kern's testimony on latent print 4A.

The district court denied Andrews's motion in limine both as untimely and because Kern's opinion on latent print 3A met the requirements of Rule 702. But it allowed Andrews to call his expert "out of fairness to the defendant," notwithstanding that Andrews had not timely disclosed his expert. The trial continued for five days. The jury heard testimony from several law enforcement officers who described the investigation, the search of the Palm Drive apartment, and the

drugs and firearms they found in the apartment. The jury also heard the recorded jail phone call between Andrews and his parents. In addition, it heard from Kern, who started by detailing his background, experience, and qualifications. Kern testified he matched latent prints 3A and 4A to Andrews's known fingerprints. Regarding his analysis of latent print 3A, Kern explained he used Adobe Photoshop to adjust the angle of the photograph of the fingerprint because it allowed him to better analyze the fingerprint. Andrews's expert later testified he had "never seen" the technique Kern used and did not think it was scientifically validated. He explained he could not match latent print 3A to Andrews's known fingerprint nor could he exclude the possibility that they matched.

The jury convicted Andrews on both counts and found he possessed all four firearms. Andrews moved for acquittal and for a new trial, challenging only his § 924(c) conviction. The district court denied both motions and sentenced Andrews to 123 months in prison. Andrews appealed.

## II. Discussion

Andrews raises two arguments on appeal. First, he contends the government's evidence was insufficient to prove he possessed the four firearms recovered at the Palm Drive apartment. Second, he claims the district court erred in admitting Kern's latent print 3A testimony under Rule 702. We consider each in turn.

### A. Sufficiency of the Evidence

Andrews challenges the sufficiency of the evidence after a jury verdict, so we view the evidence "in the light most favorable to the government and draw all reasonable inferences in its favor." *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir.

2021). We owe deference to the jury, *United States v. Jones*, 79 F.4th 844, 853 (7th Cir 2023), and will not "reweigh the evidence nor judge the credibility of witnesses," *United States v. Moshiri*, 858 F.3d 1077, 1082 (7th Cir. 2017). "If there is a reasonable basis in the record for the verdict, it must stand." *Id.* Accordingly, we overturn a verdict only where "no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt"—a "nearly insurmountable" standard. *Anderson*, 988 F.3d at 424 (citation modified).

The jury found Andrews guilty of "possess[ing] a firearm" "in furtherance of [a drug trafficking crime]." 18 U.S.C. § 924(c)(1)(A)(i). A jury may find that a defendant either "actual[ly]" or "constructive[ly]" possessed a firearm. *United States v. White*, 95 F.4th 1073, 1078 (7th Cir. 2024). Here, the government presented evidence to demonstrate "constructive" possession, which allows the jury to "deem[]" that a defendant possessed a firearm "even when he [did] not *actually* have immediate, physical control of the objects." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009). The government can prove constructive possession either through the defendant's "exclusive control" of the location where officers found the firearm, *United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009), or, where a defendant "jointly occupies [the] residence," by showing a "substantial connection" between the defendant and the firearm specifically, *United States v. Griffin*, 684 F.3d 691, 697 (7th Cir. 2012). To satisfy the latter, the government must demonstrate "proximity coupled with [] some other factor" tying the defendant to the firearm. *United States v. Davis*, 896 F.3d 784, 790 (7th Cir. 2018) (quoting *Griffin*, 684 F.3d at 696). These factors include "connection with [the firearm], proof of motive, a gesture implying control, evasive

conduct, or a statement indicating involvement in an enterprise." *Id.* (quoting *Griffin*, 684 F.3d at 696).

Because Andrews "jointly occupie[d]" the Palm Drive apartment, the government had to prove his nexus to the firearms. The government easily proved the required "substantial connection." Start with the jail phone call. Andrews raised the possibility of a § 924(c) charge (mistakenly calling it "922(c)"), Andrews's father asked "how many *you* had in the apartment," (emphasis added), and Andrews confirmed both that there were "four" firearms and that they were in various locations around the apartment. On this evidence, a reasonable juror could easily find Andrews had a "substantial connection" to the firearms. *See White*, 95 F.4th at 1078 (defendant demonstrated "awareness" of firearm where law enforcement "asked him about the firearm without showing or describing it to him" and "[defendant] seemed to know exactly what gun [the officer] was talking about"); *United States v. Richardson*, 60 F.4th 397, 399 (7th Cir. 2023) (defendant "confirm[ing]" firearm was "in the same place that it's always in" on jail phone calls supported constructive possession).

Andrews offers alternative interpretations: the call was about the charges he faced, he had just attended his arraignment and was simply reporting what law enforcement found, and his "acknowledgment" of the "four" firearms does not prove possession. But our job is not to reweigh the evidence, and a juror could reasonably infer from the phone call that Andrews was describing his "four" firearms in the apartment.

Moreover, the phone call was not the only evidence the government presented. Kern told the jury he analyzed latent prints 3A and 4A and matched them to Andrews's known fingerprints. Section 924(c) requires evidence that the defendant

possessed at least one firearm, and the fingerprints provided evidence from which a juror could conclude Andrews constructively possessed at least two of the firearms in the apartment. *See United States v. Thornton*, 463 F.3d 693, 699 (7th Cir. 2006) (defendant's fingerprint on magazine "tied [him] quite closely to the gun"); *cf. United States v. Maxwell*, 143 F.4th 844, 858 (7th Cir. 2025) (DNA on firearm supported possession).

Even if we accept, for argument's sake, that the district court should not have admitted latent print 3A, we are still left with latent print 4A. Although Andrews offered his expert's competing interpretation of latent print 4A, competing expert testimony does not support an insufficient evidence argument. Rather, we view the testimony in the government's favor. *Cf. United States v. Taylor*, 637 F.3d 812, 815–16 (7th Cir. 2011) ("[I]n reviewing the sufficiency of the evidence in a criminal conviction, we do not reweigh the evidence …."); *United Sates v. Brewer*, 143 F.4th 903, 907 (7th Cir. 2025) (same). Here, that means accepting latent print 4A matches Andrews's fingerprint, tying Andrews to the AR-style firearm. This too is sufficient evidence.

Andrews asks us to make inferences, resolve evidentiary conflicts, and reweigh evidence, all in his favor. But that is not the standard we apply. The government presented overwhelming evidence that Andrews constructively possessed the firearms in the Palm Drive apartment.

**B. Federal Rule of Evidence 702**

Andrews separately contends the district court erred in admitting Kern's testimony regarding latent print 3A because Kern's analysis was unreliable under Federal Rule of Evidence 702. Rule 702 governs the admissibility of expert

testimony, setting out the requirements "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" must demonstrate to testify, including that the proffered testimony is "the product of reliable principles and methods." Fed. R. Evid. 702(c). Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court takes on a "gatekeeping" function and must ensure "the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 152 (1999). We review de novo whether the district court "properly applied the framework in Rule 702 and *Daubert*." *United States v. Godinez*, 7 F.4th 628, 637 (7th Cir. 2021). If it did, we review for abuse of discretion the district court's decision to admit or exclude the expert evidence. *Id.* If it did not, our review is de novo. *Id.* (citing *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872–73 (7th Cir. 2021)).

Contrary to Andrews's contention, the district court's analysis satisfies Rule 702 and *Daubert*. Andrews challenged the reliability of Kern's methodology, and the district court reasoned that Kern's experience provided a sufficient basis for the reliability of his use of Photoshop. This is perhaps concise but nowhere near a failure to apply *Daubert* or the "conclusory, one-sentence ruling" against which *Godinez* warns. 7 F.4th at 637. Accordingly, we review for abuse of discretion.

Andrews first challenges the lack of a *Daubert* hearing, but district courts enjoy "broad latitude" to "decide[] *how* to determine reliability." *Kumho Tire Co.*, 526 U.S. at 142; *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) ("[T]he law grants the district court great discretion regarding the manner in which it conducts [the Rule 702] evaluation ...."). "Whether a *Daubert* hearing is necessary … lies

within the district court's discretion." *Godinez*, 7 F.4th at 637. A "district court need not conduct a *Daubert* hearing, 'where [] reliability … is properly taken for granted,'" *United States v. Johnson*, 916 F.3d 579, 587 (7th Cir. 2019) (quoting *United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2018)), and there is no "specific form" a "*Daubert* inquiry" must take, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998).

Put simply, a district court need not hold an evidentiary hearing sua sponte when considering a Rule 702 challenge, nor is a district court's failure to do so sua sponte categorically an abuse of discretion. *Cf. United States v. Jett*, 908 F.3d 252, 266 (7th Cir. 2018) ("District judges are not required to undertake each step of the Rule 702 analysis when no party specifically requests it, and they generally do not err in admitting expert testimony as a result."); *see also United States v. Owens*, 162 F.4th 844, 850 (7th Cir. 2025) ("District courts need not conduct [Rule 702] inquiries sua sponte ...."). This is not to suggest the failure to hold a hearing can never amount to an abuse of discretion. But the *Daubert* analysis is "tied to the facts of a particular case," *Kumho Tire*, 526 U.S. at 150 (citation modified), so there is no default approach or "definitive checklist or test" to a district court's Rule 702 responsibilities, *Daubert*, 509 U.S. at 593.

Here, the district court did not err by not holding a hearing. Andrews never requested an evidentiary hearing. Nor did he even challenge the admissibility of the expert testimony until the eve of trial—well after the deadline to do so. And he relied on his own untimely expert. Further, the reliability of fingerprint analysis generally is well-settled, and Kern's analysis was relatively straightforward. *See United States v. Glover*, 479 F.3d 511, 518 (7th Cir. 2007).

Andrews's challenge to the district court's ruling on the untimeliness of his objection fares no better. Although the district court found Andrews's objection untimely, it nevertheless ruled on the merits of his motion. Regardless, we have previously explained that a district court may "require pretrial presentation [of evidentiary objections] to avoid sidetracking the trial" and district courts "common[ly]" do so "for expert witnesses." *United States v. Acox*, 595 F.3d 729, 733 (7th Cir. 2010).

Finally, the district court did not abuse its discretion in deciding that Kern's use of Photoshop was a reliable methodology. An expert's experience can suffice to satisfy Rule 702(c)'s threshold. *United States v. Parkhurst*, 865 F.3d 509, 516 (7th Cir. 2017) ("Training and experience are proper foundations for expert testimony."); *Artis v. Santos*, 95 F.4th 518, 526 (7th Cir. 2024) ("[I]t is no secret that an expert need not wear a lab coat nor cite peer-reviewed studies to reliably lend his expertise to the trier of fact—experience is an equally valuable teacher."). Kern testified on his years of experience as a fingerprint analyst, his training generally in Photoshop, the "academic foundation" of this technique in other forensic fields, and the common practice in forensic analysis of borrowing techniques from related forensic fields. And the district court found his experience established the requisite reliability under Rule 702.

We see nothing wrong with the district court's reliability determination. Because Kern's experience supported the reliability of his testimony, Andrews's "criticisms … are fodder for cross-examination, not grounds for exclusion." *Artis*, 95 F.4th at 527 (challenge to expert's reliance on "informal sources" went to "weight of [expert's] testimony" not "its admissibility"). Consider *United States v. Protho*, where an expert

"testified on the image enhancements he made to [] surveillance videos and on the subjects captured in those videos." 41 F.4th 812, 822 (7th Cir. 2022). We affirmed the district court's reliability finding because of the expert's "extensive experience and specialized expertise in reviewing visual evidence." *Id.* And, in *United States v. George*, we explained that because fingerprint analysis generally is reliable, challenges to the analysis of partial fingerprints go to the "weight and credibility" of the evidence, which are best left for the "finder of fact," particularly where the defendant covered the issue on cross-examination. 363 F.3d 666, 672–73 (7th Cir. 2004).

The same is true of Andrews's challenge to Kern's testimony. "Expert testimony is still testimony, not irrefutable fact, and its ultimate persuasive power is for the jury to decide." *United States v. Brown*, 973 F.3d 667, 703–04 (7th Cir. 2020). Kern's experience provided a sufficient basis for the district court's decision, and the court appropriately determined that Andrews's challenge went to the weight of Kern's testimony—a question for the jury, not the court. Moreover, Andrews's cross-examination of Kern and his expert's testimony brought the concerns he had with Kern's analysis before the jurors as well. There was no error in denying Andrews's motion and allowing the jury to resolve this issue.[*]

---

[*] Andrews did not challenge latent print 4A. And we do not know how much weight the jury afforded latent print 3A as opposed to latent print 4A and other evidence at trial. Because the district court did not err in admitting Kern's testimony, we need not reach the harmlessness of any error. *See Godinez*, 7 F.4th at 641 (harmless error applies to Rule 702 review). But we note this to highlight the stretch of Andrews's argument.

**C. Circuit Rule 30**

We end with a comment on Circuit Rule 30. Rule 30(a) instructs an appellant to file with his brief "an appendix containing the judgment or order under review and any opinion, memorandum of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court." Rule 30(b) continues, explaining the appendix must *also* include "[c]opies of any other opinions, orders, or oral rulings in the case that address the issues sought to be raised." Finally, Rule 30(d) requires counsel certify compliance by including a written statement as well.

Andrews's counsel certified that "all of the materials required by parts (a) and (b) of Circuit Rule 30 are contained in the [] appendix." That was true with respect to Rule 30(a), but not with respect to Rule 30(b). Much of Andrews's Rule 702 argument turns on the district court's oral ruling denying his motion in limine at the start of trial—i.e., an "oral ruling[] … that address[ed] … issues sought to be raised." Cir. R. 30(b). Yet Andrews's appendix did not include the relevant portion of the trial transcript. At oral argument, counsel expressed surprise that Rule 30 required inclusion of the district court's oral ruling, which suggested counsel had not read Rule 30(b), despite counsel's certification of compliance.

Counsel must comply with Rule 30 in its entirety. The rule "allows us to know—indeed to review—what the appellant challenges on appeal." *United States v. Matthews*, 140 F.4th 893, 899–900 (7th Cir. 2025) ("[T]he '[f]ailure to supply necessary documents goes to the heart of this court's decisionmaking process.'" (quoting *Hill v. Porter Mem'l Hosp.*, 90 F.3d 220, 226 (7th Cir. 1996))). Although it was not difficult to find the district court's oral ruling denying Andrews's Rule 702 motion,

in other cases, failure to comply with Rule 30 can have more profound effects. *See id.* ("We figured it out on our own, pouring through the record and locating each ruling we understood the defendants to be challenging.… We did what defense counsels' appellate briefs failed to do."); *United States v. White*, 472 F.3d 458, 465 (7th Cir. 2006) ("This court's workload increases dramatically if an appeal is transformed into a scavenger hunt in search of a copy of the judgment below or the transcript page where a challenged decision was explained by the district court.").

More fundamentally, "[f]alse representations to the court of appeals have consequences." *United States v. Boliaux*, 915 F.3d 493, 497 (7th Cir. 2019). In civil cases, false certification can lead to summary affirmance or dismissal. *Id.* In criminal cases, we have sanctioned counsel. *Id.* (collecting cases). While we decline to sanction counsel here, we have removed counsel from the list of lawyers who we appoint under the Criminal Justice Act. This exclusion is not permanent; counsel may reapply after a year and with sufficient explanation of counsel's error and the measures counsel has since taken to ensure compliance with Rule 30.

To conclude, we once again underscore the importance of Rule 30 and of counsel's obligation to ensure the truth of representations made in court. We also underscore for Andrews that his counsel's error did not prejudice him. We reviewed the missing oral ruling as part of considering his arguments on appeal.

\* \* \*

The judgment of the district court is

AFFIRMED.